**PAN AMERICAN PETROLEUM CORPORATION et al., Appellants,**

v.

**SOUTHLAND ROYALTY COMPANY et al., Appellees.**

No. 5733.

Court of Civil Appeals of Texas.

El Paso.

Oct. 27, 1965.

Rehearing Denied Nov. 24, 1965.

**520**

Turner, Rodgers, Winn, Scurlock & Terry, Frank J. Scurlock, Carlton R. Winn, Dallas, Richard C. Milstead, Kermit, for appellants.

Jackson, Walker, Winstead, Cantwell & Miller, Kilgore & Kilgore, Charles B. Wallace, Dallas, Stubbeman, McRae, Sealy & Laughlin, F. H. Pannill, and Jack Akin, Midland, for appellees.

FRASER, Chief Justice.

This is an appeal from a summary judgment rendered by the District Court of Winkler County, Texas, in response to a motion therefor presented by plaintiffs. The said judgment recites that there is no substantial dispute as to any material fact and that the plaintiffs are entitled to judgment as a matter of law, and there are no items of expense incurred by the defendants that are properly chargeable against the proceeds of the sale of gas and distillate except taxes levied by the State of Texas. (There appears to be no dispute as to the amounts representing sales and taxes.)

This case was tried once before, and the Supreme Court of Texas handed down its opinion reversing the judgments of both the trial court and this Court of Civil Appeals. Because of the nature of this case, we feel it necessary to present somewhat lengthy excerpts from the last and controlling decision by the Supreme Court, construing the lease involved in this controversy. It is well to note that at the conclusion of the majority opinion, the Supreme Court, speaking through Justice Hamilton, said: "* * * and the cause

is remanded to the District Court for further proceedings in accordance with this opinion." This opinion by the Texas Supreme Court is found in Volume 378 S.W. 2d, page 50. The Supreme Court, in a thorough and well-documented opinion, construes the lease herein involved and the meaning of its terms. We quote from said opinion as follows:

"In 1925 H. G. Hendrick and wife Ida Hendrick leased to J. W. Grant 10,240 acres of land in Winkler County for the purpose of mining and operating for oil, gas, potash and other minerals, subject to certain covenants. We will quote the pertinent parts of said lease:

'* * * do grant, lease and let unto the said lessee for the sole and only purpose of mining and operating for oil and gas *potash or other minerals * * *.*

'It is agreed that this lease shall remain in force for a term of 20 years from this date, and as long thereafter as oil or gas, *potash or other minerals* or either of them is produced from said land by the lessee.

'In consideration of the premises the said lessee covenants and agrees:

'1st. To deliver to the credit of lessor, free of cost, in the pipe line to which they may connect their wells, the equal one-eighth part of all oil produced and saved from the the leased premises *and ⅛ of the net proceeds of potash and other minerals at the mine.*

'2d. To pay the lessor One Hundred Dollars, each year in advance for the gas from each well where gas only is found, while the same is being used off the premises, and lessor to have gas free of cost from any such well for all stoves and all inside lights in the principal dwelling house on said land during the time by making their own connections with the well at their own risk and expense.

'3rd. To pay lessor for gas produced from any oil well and used off the premises at the rate of Fifty and No/100 Dollars per year for the time during which such gas shall be used, said payments to be made each three months in advance.

\* \* \* \* \* \*

'Lessee shall have the right to use, free of cost, gas, oil and water produced on said land for all operations thereon, except water wells of lessor.'

"This lease is on a printed form in which the blanks have been filled in with a typewriter and certain interlineations made in longhand on the printed portions thereof. The interlineations in the quoted part above are italicized. The respondents are the present owners of the lease in so far as it covers three-fourths of a section of land (480 acres) of the 10,240 acres included therein, and petitioners are the owners of varying mineral interests in the lands covered by the lease, including the 480 acres of land which is involved in this lawsuit."

The court then recounts the history of the development of this lease, pointing out therein that respondent-defendants paid $50.00 per well per year where gas was being taken from a well producing both oil and gas, and $100.00 per well per year where the well produced gas only. Respondents had from time to time been selling some gas to other operators for use in developing and processing on their own properties. The court then goes on to say:

"* * * Petitioners were not notified of such sales, nor did the respondents pay petitioners ⅛ of the proceeds of such sales. It is undisputed that the petitioners had no knowledge of any such sales.

"Respondents drilled a deep gas well on petitioners' portion of the T. J. Hendrick lease in 1956 which produced gas only. They began selling the gas from this well in 1958. Two other deep gas wells were completed, one in 1958 and one in early 1959, from which respondents began selling gas. Petitioners learned of such sales shortly before filing this suit in 1959, at which time respondents were selling gas from these three wells at the rate of more than a million dollars' worth per year.

"Petitioners contend that respondents are obligated to them for the payment of ⅛ of the proceeds of the sale of gas from their portion of the premises covered by the lease as provided in the first royalty clause therein. Respondents contend that they are only obligated to pay for gas used or sold under the provisions of paragraphs 2 and 3, contending that the first royalty provision does not provide for royalty on gas. The Court of Civil Appeals has held that the first royalty provision does not provide for the payment of royalty on gas, and that respondents are liable only under 2 and 3."

 * * * * * *

"On the face of the lease as finally written and executed by the parties there is a possible conflict between the first royalty clause and the second and third royalty clauses. The first royalty clause, as amended, imposes a clear legal obligation to pay royalty of ⅛th of the net proceeds on gas sold, including gas sold for use by others off the premises, and which in its second and third royalty clauses does not impose clear legal obligations to pay flat-rate royalties on gas sold for use by others off the premises but are ambiguous in that respect. If we construe the second and third clauses as imposing obligations to pay the flat-rate royalties while gas is being used off the premises by others to whom the gas is sold, as well as by the lessee, we either create an absolute repugnancy between the royalty clauses or we impose an obligation to pay both the percentage and the flat-rate royalties for gas sold. On the other hand, if we construe the second and third royalty clauses as imposing obligations to pay the flat-rate royalties only while gas is being used off the premises by the lessee, repugnancy is avoided. The obligation would be to pay the percentage royalty on gas sold and the flat-rate royalty on the gas used off the premises. Thus none of the clauses are nullified and all three clauses are given meaning and operative effect. Sound rules of construction require us so to construe them. Woods v. Sims, 154 Tex. 59, 273 S.W. 2d 617, 620; Benge v. Scharbauer, 152 Tex. 447, 259 S.W.2d 166, 167.

"While there is no need here to resort to them, there are other secondary rules of construction for resolving apparent conflicts which, if applied, would lead to the same result. One is the rule which gives effect to written or typewritten provisions over printed provisions. McMahon v. Christmann, 157 Tex. 403, 303 S.W.2d 341, 344. Another is the rule which gives effect to an earlier over a later provision. Benskin v. Barksdale, Tex.Com.App., 246 S.W. 360, 363; Williston on Contracts, Revised Edition, § 624.

"The effect of our holding here is that a lease which contains a specific provision for the payment of royalty for gas sold and also contains a provision for the payment of royalty on a flat-rate basis for gas used off the premises, the term 'used off the premises' does not include 'sold for use off the premises.' ".

The court then cites a number of cases as authority for its holding as set forth above, and further holds as follows:

"Petitioners' motion for rehearing is granted, the judgment heretofore

rendered and entered is set aside, and the judgments of the District Court and the Court of Civil Appeals are reversed and the cause is remanded to the District Court for further proceedings in accordance with this opinion."

Chief Justice Calvert of the Supreme Court of Texas wrote a concurring opinion discussing the various aspects and the construction of this lease with its changes in the printed form, and, after citing authorities substantiating his concurring opinion, Chief Justice Calvert stated, inter alia:

"* * * I agree that to avoid repugnancy and harmonize the provisions of the lease the second and third royalty clauses should be held to apply only to gas used off of the premises by the lessee and the first royalty clause should be held to apply to gas sold to others for use off of the premises."

The District Court, as above stated, granted the plaintiffs' motion for summary judgment awarding the respective parties their respective fractional interest in ⅛th of the gross proceeds of the sale of gas and distillate, excepting only the taxes levied on the products sold.

■ The appellants here have presented a total of nineteen points of error, and an additional point, No. 20, is presented in appellants' Reply Brief. The first thirteen points seem to us to be only further discussion and consideration of matters already clearly disposed of by the opinion of the Supreme Court. We do not believe it necessary to itemize or eludicate any or all of these first thirteen points as they deal with construction of certain terms of the lease and with the question of whether or not plaintiffs had actual or constructive knowledge of sales of gas by defendants. These matters, as stated above, were thoroughly considered and clearly disposed of in the opinion of the Supreme Court of Texas. Mitchell v. Mitchell, 157 Tex. 346, 303 S.W.2d 352; Case-Pomeroy Oil Corp. v. Pure Oil Company, 279 S.W.

2d 886 (wr. ref.). The above cited cases and the cases cited therein clearly hold that once the highest court of the state has given a particular effect or construction to a specific instrument in writing, such construction or determination is conclusive upon these matters in subsequent litigation involving them, even though the subsequent controversy might be presented by different parties or be concerned with different properties. Also, the following cases hold that extrinsic evidence must be excluded where the court has construed or interpreted the instrument involved. (In this case the court specifically states that its construction avoids any ambiguity and repugnance which, of course, precludes the admission of any extrinsic evidence.) Anderson & Kerr Drilling Co. v. Bruhlmeyer, 134 Tex. 574, 136 S.W.2d 800, 127 A.L.R. 1217; Rio Bravo Oil Co. v. McEntire, 128 Tex. 124, 95 S.W.2d 381, 96 S.W.2d 1110; McMahon v. Christmann, 157 Tex. 403, 303 S.W.2d 341; Universal C. I. T. Credit Corp. v. Daniel, 150 Tex. 513, 243 S.W.2d 154. Therefore, we overrule appellants' first thirteen points.

■ Appellants' fourteenth point alleges that the Supreme Court of Texas had the power, authority and jurisdiction to have sustained the plaintiffs' motion for summary judgment had such motion been sustainable, and the refusal of the Supreme Court to do so is a holding to the effect that the plaintiffs were not entitled to a summary judgment by the trial court, and that the trial court was bound thereby. We do not believe that this is a sustainable implication or is in any way a holding by the Supreme Court, as set forth by the appellants. Finding no merit in this point it is accordingly overruled.

■ We pass now to the remainder of appellants' points, to-wit, 15 through 20, which attack the validity of the trial court's summary judgment, maintaining and alleging that the trial court committed error in granting relief by way of summary judgment. It is our belief and holding that these

last five points must be overruled. This takes us back again to the wording of the opinion by the Supreme Court wherein it reverses the holdings of the District Court and Court of Civil Appeals and states: " * * * and the cause is remanded to the District Court for further proceedings in accordance with this opinion". We believe that the Supreme Court construed the terms of the lease, resolved any possible repugnance, ambiguities, or conflicts therein, and that this statement means that the cause was remanded by the said court so that the trial court could compute the amount of royalty due the plaintiffs. The said opinion by the Supreme Court is so conclusive and all-encompassing that there is nothing left to determine except the amount of money due the plaintiffs as royalty from the sale of gas and distillate. Justice Hamilton, in writing the majority opinion for the Supreme Court, said: "In construing the first *royalty* provision we note that it provides for ⅛ of the net proceeds of potash and other minerals at the mine. We think there is no question raised but that the 'proceeds of potash and other minerals' means net proceeds from the *sale* of potash and other minerals." (Emphasis ours.) Appellants describe the manner in which gas and distillate is produced and sold, as part of their Response to Request for Admissions. In considering and construing such Response the District Court held, as appellees contend—and correctly, we think —that it is clear there are no properly deductible items of expense involved in the sale of the gas and distillate, as it is set forth without dispute that the gas flows from the wells by its own power, some thirty to sixty feet, to a separator and/or meter and pipline installed by the purchaser. The distillate flows some 2000 feet to tanks and is there taken by the purchaser. Plaintiff-appellees do not dispute or controvert the amount of money received for the sale of gas and distillate nor the amount of taxes involved.

■■ It has long been established that a royalty interest is one that is free of cost

of producing, saving and preparing the product for market. Miller v. Speed, Tex. Civ.App., 248 S.W.2d 250 (n. w. h.). In Merrill, Covenants Implied in Oil and Gas Leases (Second Edition), section 85, page 214, it is stated:

"If it is the lessee's obligation to market the product, it seems necessarily to follow that his is the task also to prepare it for market, if it is unmerchantable in its natural form. No part of the cost of marketing or of preparation for sale is chargeable to the lessor. This is supported by the general current of authority."

Also, Siefkin in his "Rights of Lessor and Lessee with Respect to Sale of Gas and as to Gas Royalty Provisions", Fourth Annual Institute on Oil and Gas Law and Taxation, Southwestern Legal Foundation (1953), page 181 at page 202, says:

"If, as seems to be conceded by nearly all the authorities, value at the well determines, it necessarily follows that royalties may not be computed upon *transported* or *processed* values— which are not values of such gas at the well—without deducting the lessor's proportionate part of the transportation or processing expense."

To the same effect are Skaags v. Heard, 172 F.Supp. 813 (U.S.D.C., Southern District of Texas, 1959), and Gilmore v. Superior Oil Co., 192 Kan. 388, 388 P.2d 602. Lastly, the lease itself contains the following provision:

"To deliver to the credit of lessor, free of cost, in the pipe line to which they may connect *thei* wells, the equal one-eighth part of all oil produced and saved from the leased premises and ⅛ of the net proceeds of potash and other minerals at the mine."

We find no challenge to the correctness or accuracy of the figures showing the price received for the sale of gas and distillate and the amount of taxes deductible there-

from. However plaintiff-appellees do maintain, and we think correctly, that the costs of production, preparation, saving and marketing are not properly deductible, as we are dealing here with a royalty interest carefully construed and set forth in the majority opinion of the Supreme Court. Also, we do not find any case cited by appellant-defendants holding that the interest of a royalty owner is subject to the costs and expenses of production. In any event, there appears no dispute with regard to the character or amount of the expenditures presented by defendant, the dispute being only that such expenditures are not properly deductible. Finally, we again quote from the majority opinion of the Supreme Court:

"In construing the first royalty provision we note that it provides for ⅛ of the net proceeds of potash and other minerals at the mine. We think there is no question raised but that the 'proceeds of potash and other minerals' means net proceeds from the sale of potash and other minerals. We also think there is no serious question raised but that the words 'mineral' or 'minerals' include gas. This is well settled in our law, as is shown by the following cases * * *".

The Supreme Court further said:

"The effect of our holding here is that a lease which contains a specific provision for the payment of royalty for gas sold and also contains a provision for the payment of royalty on a flat-rate basis for gas used off the premises, the term 'used off the premises' does not include 'sold for use off the premises'".

In these last points appellants also urge that the wording of the opinion or judgment by the Supreme Court constitutes a general remand. With this position we cannot agree, because, as we have set forth above, the Supreme Court carefully went into and construed the elements of the lease in question so that there was no repugnancy, such construction leaving no basis for a claim of ambiguity. Therefore the trial court, in the matter now before us, was confronted with a lease that had been carefully construed, outlined and explained, the decision also defining and declaring the interests here involved belonging to the appellees as royalty interests. Further, it being a well-adjudicated and accepted legal principle that royalty interests are not chargeable with the expenses of production, preparation, marketing, etc., but only with taxes, and there being no controversy over the amounts received by defendants for the sale of the products here involved, and there being no controversy as to the amount of taxes claimed to be deductible, the trial court, having no genuine disputed fact issue before him, quite properly granted plaintiffs' motion for summary judgment. Gulbenkian v. Penn, 151 Tex. 412, 252 S. W.2d 929, 931 (1952), and the many cases following and citing the holding in the above case. We believe that, in so doing, the trial court was carrying out the exact mandate of the Supreme Court decision, which we construe as ordering said trial court to determine the amount of the "net proceeds" of the said sales of gas and distillate. This, of course, could not be defined as a "general remand".

Appellants argue that there is a fact question regarding the amount of money spent on the cost and production of these leases, but this is not a deductible expense; therefore, it did not need to be considered by the trial court.

Therefore, as a result of the findings and holdings of the Supreme Court of Texas and the uncontroverted exhibits herein that are applicable, there remained no controversial issue of fact to be determined by the trial court, and he was therefore correct in granting the summary judgment here appealed from.

 In their Reply Brief appellants present a new point, numbered 20, which alleges that the Supreme Court could have rendered judgment for the appellees, who

were plaintiffs below, because the record was in such shape, and contained enough information, to make such rendition possible. Therefore, say the appellants, the fact that the Supreme Court did not render such judgment was binding on the trial court, and the trial court was accordingly in error in granting its summary judgment. We do not believe this point has sufficient merit to warrant its being sustained. Appellants here, in effect, argue that because, in their opinion, the Supreme Court had enough information to have rendered a judgment for appellees, its failure to do so was significant. We find nothing in the opinion by the Supreme Court to justify appellants' position, as the Supreme Court went to great lengths to interpret and construe the lease, and then sent it back to the fact-finding trial court for determination of the amounts due appellees. Point 20 is therefore overruled.

Finding no error, appellants' points are all overruled and the judgment of the trial court is in all things affirmed.