Samuel Joe **JUDICE** and Kathryn Tandy Thompson, Petitioners,

v.

**MEWBOURNE OIL COMPANY,**
et al., Respondents.

No. 95–0115.

Supreme Court of Texas.

April 25, 1996.

Appeal from Amarillo Court of Appeals, Seventh Judicial District; H. Bryan Poff, Jr., Justice.

D. Patrick Long, Brad Rockwell, Dallas, for Petitioners.

Thomas R. Dixon, Jr., Kevin P. Parker, Amarillo, for Respondents.

OWEN, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, HECHT, CORNYN, ENOCH, SPECTOR and BAKER, Justices, join.

The question in this case is whether post-production compression costs can be allocated to royalty owners under the terms of certain oil and gas leases and division orders. We hold that the royalty provisions in the leases and one of the division orders at issue in this case are unambiguous and that the royalty owners are required to bear their proportionate share of post-production compression costs. Accordingly, the judgment of

the court of appeals is reversed in part. 890 S.W.2d 180.

Samuel Joe Judice and Kathryn Tandy Thompson (the "Judices") are royalty owners under three oil and gas leases. Mewbourne Oil Company and others (collectively, "Mewbourne") hold the working interest under these leases. The Judices brought suit for damages, asserting among other claims that Mewbourne had improperly paid royalties on gas by deducting the Judices' pro rata share of post-production compression costs from the proceeds from the sale of the gas. The Judices also requested a declaratory judgment that the leases had terminated as to a certain formation because of cessation of production.

Following a jury trial, the trial court awarded the Judices the compression costs that Mewbourne had deducted. The trial court found in favor of Mewbourne, however, on the termination issue, concluding that as a matter of law, the leases had not terminated. The Judices appealed and Mewbourne asserted cross-points of error. The court of appeals affirmed the judgment of the trial court in all respects, and all parties have sought review in this court.

From 1983 until the Judices filed suit in 1989, the parties agree that division orders governed the payment of royalty. The Judices do not contend that the division orders were ineffective to the extent they conflicted with the leases. Nor do they seek to hold Mewbourne liable for any benefit it retained when it paid royalties based on the division orders, rather than the leases. *See Gavenda v. Strata Energy, Inc.,* 705 S.W.2d 690, 692–93 (Tex.1986). Accordingly, we look only to the division orders to determine Mewbourne's royalty obligations prior to the time suit was filed. The parties agree that the filing of suit revoked the division orders and

that the royalty provisions in the leases govern from that time forward. *See Exxon Corp. v. Triphene Middleton,* 613 S.W.2d 240, 249–51 (Tex.1981).

■ We turn first to a construction of the leases. The royalty clause in one of the leases differs materially from the other two, and Mewbourne concedes that under that lease, it may not deduct post-production compression charges.[1] The remaining two leases contain the following royalty provision:

In consideration of the premises the said Lessee covenants and agrees:

\*     \*     \*     \*     \*     \*

2. To deliver to the credit of Lessor . . . three thirty-seconds (3/32) . . . of the market value at the well of all gas produced, and saved from said leased premises.

The trial court and the court of appeals concluded this provision was ambiguous. The jury found that the parties intended that royalties were to be based on the price received by Mewbourne without a deduction for compression charges. We hold that the provision is unambiguous and the jury's finding regarding the parties' intent should be disregarded as to these two leases.

■ The royalty is to be determined based on "market value at the well." This phrase means value at the well, net of any value added by compressing the gas after it leaves the wellhead. *See Heritage Resources, Inc. v. NationsBank,* 939 S.W.2d 118, 126–27 (Tex.1996), decided today. *See also Texas Oil & Gas Corp. v. Hagen,* 683 S.W.2d 24, 28–29 (Tex.App.—Texarkana 1984), *writ dism'd as moot,* 760 S.W.2d 960 (Tex.1988). Mewbourne is entitled to allocate to the Judices their proportionate share of the reasonable cost of post-production compression under these leases.[2]

1. The royalty clause in this lease provides:

2. *Royalty On Gas.* Lessee shall pay to Lessor as royalty on gas, including casing head gas or other gaseous substances produced from said land and sold on or off the premises, 3/16 of the net proceeds at the well received from the sale thereof, provided that on gas used off the premises or by Lessee in the manufacture of gasoline or other products therefrom, the royalty shall be the market value at the well of

3/16 of the gas so used; as to all gas sold by Lessee under a written contract, the price received by Lessee for such gas shall be conclusively presumed to be the net proceeds at the well or the market value at the well for the gas so sold.

2. In its brief to this Court, Mewbourne concedes that it is not seeking to overturn the damages awarded for the period of time the royalty clause in the leases, as opposed to the division orders,

A more complicated question is presented by the division orders. There are three at issue. The division orders covering the Judice # 1 well and the Judice # 2 well provided in pertinent part:

2. Settlement for gas sold shall be based on the gross proceeds realized at the well by you [the Judices]. For gas used off the leases, settlement shall be based on market value at the well.

The division order covering the Judice # 3 well was a typed document with handwritten deletions in the royalty clause. The language deleted is shown in brackets, as follows:

2. Settlement for gas sold shall be based on the net proceeds realized at the well by you, [after deducting any costs incurred in compressing, treating, transporting and/or dehydrating the gas for delivery. If the gas is processed in or near the field where produced, settlement shall be based on the net proceeds realized at the well, as determined by the agreement between the producer and processor, or, in the absence of such an agreement, the same basis as settlement with other producers of gas of like kind and quality processed at the same plant. For gas used off the lease, settlement shall be based on market value at the well.]

The gas produced under each of the leases was sold off the leased premises to a third party purchaser, with the exception of relatively small volumes used off the lease as compressor fuel.

■ Mewbourne contends that the division orders expressly allowed it to deduct compression costs. In the trial court, Mewbourne contended in the alternative that the division orders are ambiguous. However, in this Court, Mewbourne no longer asserts any ambiguity. Mewbourne affirmatively contends that the division orders are unambiguous and argues that since there was no finding in the trial court that Mewbourne breached the division orders, the trial court erred in entering judgment for the Judices on this issue.

We conclude that the division orders covering the Judice # 1 and # 2 wells are ambiguous with regard to gas sold. The term "gross proceeds" means that the royalty is to be based on the gross price received by Mewbourne. The use of the term "at the well" indicates just the opposite, that the royalty is to be based on its value "at the well." *See generally Martin v. Glass*, 571 F.Supp. 1406, 1411–15 (N.D.Tex.1983), *aff'd*, 736 F.2d 1524 (5th Cir.1984) (the phrase "net proceeds" contemplates deductions). As discussed above, value at the well means the value of the gas before it has been compressed and before other value is added in preparing and transporting the gas to market. *See Heritage Resources*, 939 S.W.2d at 126–27. There is an inherent conflict in the use of the two terms that renders the clause ambiguous. However, the division orders are not ambiguous with regard to gas used off the leases. The royalty is to be based on "market value at the well."

The Judices obtained jury findings that Mewbourne "accepted the division orders executed by the Judice family as setting forth the basis upon which royalties were to be paid." The trial court's judgment recites that this finding supports a judgment in favor of the Judices for the value of the compression charges that were deducted. Mewbourne concedes that one element of the Judices' claim was submitted and that this would otherwise support the judgment under Texas Rule of Civil Procedure 279.[3] Howev-

---

determined royalty. Mewbourne seeks only a construction of its leases in order to retain the right in the future to deduct these costs.

3. Rule 279 provides in relevant part:
When a ground of recovery or defense consists of more than one element, if one or more of such elements necessary to sustain such ground of recovery or defense, and necessarily referable thereto, are submitted to and found by the jury, and one or more of such elements are omitted from the charge, without request

or objection, and there is factually sufficient evidence to support a finding thereon, the trial court ... may ... make and file written findings on such omitted element or elements in support of the judgment. If no such written findings are made, such omitted element or elements shall be deemed found by the court in such a manner as to support the judgment. Tex.R.Civ.P. 279.

er, Mewbourne argues that the finding is not "necessarily referable" to the deduction of compression costs because it also supports a recovery by the Judices of the market value of gas used off the lease as compressor fuel. This contention is without merit. Regardless of the effect of this jury finding, other findings support the trial court's judgment. In response to broadly worded issues, the jury found that "the Judice family and Mewbourne Oil Co., intended that the royalties were to be based upon the price received by the working interest owners from the purchasing pipeline, without deduction for compression charges." The trial court did not err in entering judgment in favor of the Judices based on the division orders covering wells # 1 and # 2 for gas sold. Mewbourne has not challenged the judgment to the extent it awards royalties for gas used off the leases as compressor fuel.

■ The trial court did err in concluding that Mewbourne was prohibited under the third division order, covering the Judice # 3 well, from deducting post-production compression costs from the proceeds received for the sale of the gas. The language in the division order, even in the face of the handwritten deletions, unambiguously provides that royalty is based on net proceeds at the well. "Net proceeds" expressly contemplates deductions, and we note once again that "at the well" means before value is added by preparing the gas for market. *See Martin*, 571 F.Supp. at 1411–15 ("net proceeds" contemplates deductions); *Heritage Resources*, 939 S.W.2d at 126–27. The handwritten deletions in the division order do not alter the effect of the remaining language.

With regard to the termination issue, we agree with the trial court and the court of appeals that the lease has not terminated for non-production.

Accordingly, pursuant to TEX.R.APP.P. 170, this Court grants the parties' applications for writ of error, and without hearing oral argument, reverses in part and affirms in part the decision of the court of appeals, and remands this case to the trial court for further proceedings consistent with this opinion.

GONZALEZ, J., filed a dissenting opinion in which ABBOTT, J., joins.

GONZALEZ, Justice, joined by ABBOTT, Justice, dissenting.

As in another case decided today, *Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118 (Tex.1996), the Court confronts and decides the issue of whether "market value at the well" in an oil and gas lease includes or excludes post-production costs. For the first time in Texas jurisprudence, the Court concludes that post-production costs are included within the definition of that phrase. Yet, the Court fails to analyze the phrase in the context of each contract to determine whether the parties relied on another meaning. As I noted in my dissent to *Heritage Resources*, this approach overturns well-settled principles of contract interpretation. *Heritage Resources*, 939 S.W.2d at 132 (Gonzalez, J., dissenting) (citing *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex.1994)).

The oil and gas leases at issue in this case state that royalty is to be calculated based on "the market value at the well of all gas produced, and saved from [the] leased premises." In their pleadings, both the Judices and Mewbourne Oil Company contended that the leases could be unambiguously construed in their favor. Both asserted in the alternative that, if theirs was not the only reasonable interpretation, then the leases are ambiguous. The Judices argued that "it was the intent of the parties that royalty should be based on gross proceeds," and Mewbourne argued that "[i]t was the intent of the parties that compression charges be deductible from the gas royalties." The trial court found the royalty provisions ambiguous and submitted the following question to the jury:

Do you find that the contracting parties to [the] Lease[s] ..., being the Judice family and Mewbourne Oil Co., intended that the royalties were to be based upon the price received by the working interest owners from the purchasing pipeline, without deduction for compression charges?

The jury answered "Yes." Thus, after hearing all of the evidence in this case, the jury decided that the parties did not intend for the Judices to share in compression costs. The court of appeals agreed that this ques-

tion was one for the jury and affirmed the trial court's judgment. 890 S.W.2d 180, 184.

As in *Heritage Resources,* the Court's reading of its own definition of "market value at the well" into these leases yields a different conclusion. In my opinion, the Court errs by failing to consider the parties' intent. *See Forbau,* 876 S.W.2d at 133. Furthermore, I reiterate my view that the rule announced in *Heritage Resources* should apply only prospectively, as lessors such as the Judices could not have expected this result. *See Heritage Resources,* 939 S.W.2d at 132–33 (Gonzalez, J., dissenting).

For the foregoing reasons, I dissent.