**HERITAGE RESOURCES, INC., Petitioner,**

v.

**NATIONSBANK, Co-Trustee under the will of David B. Trammell, deceased et al., Respondents.**

No. 95–0515.

Supreme Court of Texas.

Argued Nov. 29, 1995.

Decided March 21, 1997.

Dissenting Opinion to Original Opinion of April 25, 1996.

Rehearing of Cause Overruled March 21, 1997.

GONZALEZ, Justice, joined by CORNYN, SPECTOR, and ABBOTT, Justices, dissenting on motion for rehearing.

The contract at issue clearly denotes the parties' intent that "there shall be no deductions from the value of Lessor's royalty by reason of any ... cost of ... transportation." The Court's unprecedented refusal to enforce the contract as written has generated quite a controversy. Since our original opinions issued on April 25, 1996, the following educational institutions, charitable organizations, independent mineral and royalty owners, and oil and gas practitioners have filed amicus curiae briefs asking the Court to withdraw its prior opinion and grant NationsBank's motion for rehearing: the Texas Land Commissioner; University of Texas System; Southern Methodist University; Baptist Foundation of Texas; Boy Scouts of America; Moody Foundation; Texas Bankers Association; Independent Bankers Association of Texas; National Association of Royalty Owners; National Association of Royalty Owners—Texas; American National Insurance Co.; River Oaks Trust Company; Texas Commerce Bank; First Victoria National Bank; Moody National Bank; Frost National Bank; Landon Alford; John R. Alford, Jr.; Dan Moody, Jr., Ben F. Vaughan, III and

John B. McFarland of Graves, Dougherty, Hearon & Moody, P.C.; C.C. Small, Jr. of Small, Craig & Werkenthin; Jeffery L. Hart and John C. Cardwell of Cardwell & Hart; Cullen R. Looney; Richard Watt; Harry M. Whittington; Howard P. Newton of Wells, Pinckney & McHugh; Clayton Hoover; Randall K. Sadler; and W.F. (Bill) Countiss.

On the whole, these amici support my view that the majority and the concurrence err by discarding the meaning the parties attributed to the "no deductions" language at issue here. 939 S.W.2d 118, 131(Gonzalez, J., joined by Abbott, J., dissenting); *see Lenape Resources Corp. v. Tennessee Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex.1996) ("In construing a written contract, our primary concern is to ascertain the true intentions of the parties as expressed in the written instrument."); *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex.1995) ("When construing a contract, courts must strive to give effect to the written expression of the parties' intent. To do so, they must read all parts of a contract together." (citations omitted)); *Lyons v. Montgomery*, 701 S.W.2d 641, 643 (Tex.1985) ("Language used by parties in a contract should be accorded its plain, grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated."); *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518–19 (Tex.1980) ("In the interpretation of contracts the primary concern of courts is to ascertain and to give effect to the intentions of the parties as expressed in the instrument. To achieve this object the [c]ourt will examine and consider the entire instrument so that none of the provisions will be rendered meaningless." (citation omitted)); *Mercer v. Hardy*, 444 S.W.2d 593, 595 (Tex.1969) (" '[A]n interpretation will not be given to one part of a contract which will annul another part of it.' " (quoting 17A C.J.S. *Contracts* § 309)). NationsBank and the amici offer a number of constructions that would give some effect to the royalty clauses at issue. On this basis alone, we should grant the motion for rehearing, withdraw our previous opinions, and issue a new opinion affirming the judgment of the court of appeals.

Amici also cite authorities which raise doubts about the Court's conclusion that the law governing post-production costs is unsettled. In *Wintermann v. McDonald,* 129 Tex. 275, 102 S.W.2d 167 (1937), we stated that "[t]he term 'free royalty' ... must mean that the interest reserved to the State in the minerals produced on school land ... *must not bear any part of the expense of the production, sale, or delivery thereof."* *Id.* 102 S.W.2d at 173 (emphasis added); *see also Pan Am. Petroleum Corp. v. Southland Royalty Co.,* 396 S.W.2d 519, 525 (Tex.Civ.App.— El Paso 1965, writ dism'd) (recognizing "well-adjudicated and accepted legal principle that royalty interests are not chargeable with the expenses of production, preparation, marketing, etc."); *Miller v. Speed,* 248 S.W.2d 250, 256 (Tex.Civ.App.—Eastland 1952, no writ) (stating that "[t]he interest reserved is clearly royalty, hence, free of cost of producing, saving and preparing for market"). The legislation we construed in *Wintermann* contained no definition of the term "free royalty" and did not expressly prohibit deductions for the expenses of production, sale, or delivery. These cases establish that a royalty interest does not bear such expenses, contrary to the result the Court reached.

Finally, numerous amici argue that, if the Court overrules the motion for rehearing, we should apply the new rule of law set out in this case only prospectively. Amici claim that the royalty clauses at issue are similar to most publicly available printed forms used in Texas for the last several decades. "No deductions" clauses like the one used in this case are common to the industry and are understood to allocate some or all post-production costs to the lessee. By altering this industry understanding, the Court's decision will disrupt longstanding contractual and economic relationships, cause uncertainty, and create unnecessary litigation over contracts containing similar language. Thus, at a minimum, the Court should limit this decision to prospective application.

JUSTICE CORNYN and JUSTICE SPECTOR have joined JUSTICE ABBOTT and me in voting to grant NationsBank's motion for rehearing. CHIEF JUSTICE PHILLIPS has also switched his position and now agrees with JUSTICE OWEN'S concurrence, in which JUSTICE HECHT joined. JUSTICE ENOCH has recused himself on rehearing, leaving JUSTICE BAKER as the lone remaining supporter of his original majority opinion. Thus, the Court is now deadlocked four-to-four on the proper disposition of this case. We cannot call upon the Governor to specially appoint a replacement Justice to break the tie under these circumstances, and NationsBank's motion for rehearing is therefore overruled by operation of law. *See Saenz v. Fidelity & Guaranty Ins. Underwriters,* 925 S.W.2d 607, 612 (Tex.1996) (holding that motion for rehearing is not "a case" or "a decision" requiring majority vote to overrule); *see also* TEX. CONST. art. V, § 2 (mandating concurrence of five Justices to render "a decision of a case"); *id.* § 11 (allowing Governor to appoint substitute when a member of this Court is "disqualified to hear and determine any case"). Because we are without majority agreement on the reasons supporting the judgment, however, the judgment itself has very limited precedential value and controls only this case. *See University of Tex. Med. Branch at Galveston v. York,* 871 S.W.2d 175, 176–77 (Tex.1994). Cases relying on the new rule of law pronounced in the Court's April 25, 1996 opinion are similarly restricted. *See, e.g., Judice v. Mewbourne Oil Co.,* 939 S.W.2d 133, 135–36 (Tex. 1996) (citing *Heritage Resources* for proposition that lessee must share in post-production costs because "[t]he royalty is to be determined based on 'market value at the well' ").

Lessors should not lose the benefit of their bargain because the Court now reads language clearly prohibiting deductions from royalty as "surplusage." The Court's error in this case will have far-reaching effects on the oil and gas industry in Texas, as millions of dollars will now be placed in dispute. This decision unnecessarily increases the transaction costs of all parties with similar lease provisions. For these reasons, and for the reasons stated in my dissenting opinion of April 25, 1996, we would grant NationsBank's motion for rehearing.