**Lon CARTWRIGHT, Lane T. Sealy, Trustee of the Holman Cartwright Irrevocable Trust, and Richard Lucas, Appellants,**

v.

**COLOGNE PRODUCTION COMPANY, Robert Hausser, and Lawrence J. Flume, Jr., Appellees.**

No. 13–04–00031–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

Jan. 5, 2006.

Rehearing Overruled Feb. 9, 2006.

V.E. Lanfear, Jr., Attorney At Law, San Antonio, for Appellants.

Calhoun Bobbitt, Attorney At Law, James L. Drought, Attorney At Law, San Antonio, for appellees.

Before Justices HINOJOSA, YAÑEZ, and CASTILLO.

## OPINION

Opinion by Justice HINOJOSA.

This is a gas royalty case. Appellants, Lon Cartwright, Lane T. Sealy, Trustee of the Holman Cartwright Irrevocable Trust, and Richard Lucas, claimed that neither the lease nor the gas division order author- ized appellees, Cologne Production Company, Robert Hausser, and Lawrence J. Flume, Jr., to deduct gas compression and treatment costs. Appellants contend the trial court erred in granting appellees' motion for summary judgment and in denying their motion for partial summary judgment. We affirm in part and reverse and remand in part.

### A. FACTUAL BACKGROUND

On September 20, 1922, Holman Cartwright and Claire L. Cartwright (appellants' predecessors) executed an oil and gas lease to Houston Oil Company of Texas. Cologne Production Company acquired the lease on January 1, 1968, and since then has operated the wells on the leased premises. The Cartwrights and Cologne executed a gas division order, dated January 1, 1968, which expressly provides for the computation of gas royalties as follows:

Each of the undersigned agrees as follows:

> In making settlements for the interests of the undersigned in said proceeds, you are authorized to use the net proceeds received by you at the wells when the gas is sold at the wells; but if sold or used off of the premises, you are authorized to use the market value at the wells of the gas so sold or used off of the premises, such market value at the wells is in no event to exceed the net proceeds received by you from such sale.

Throughout the time that Cologne has operated these wells, the gas produced has flowed into gathering lines located on the leased premises, into facilities for the removal of hydrogen sulfide, also located on the leased premises, and into compressors on the leased premises, which compress the gas to pressures sufficient to enable it to enter the sales pipeline. Since it ac-

quired the lease, Cologne has deducted the royalty owners' proportionate shares of the costs of treating and compressing the gas in calculating royalties.

Appellants filed suit requesting (1) a declaratory judgment that appellees were not authorized to deduct any operating expenses before calculating and paying gas royalties, and (2) an itemized accounting of these expenses. Appellants then moved for partial summary judgment requesting that the court find as a matter of law that appellees were not authorized to deduct any expenses from revenues of all gas produced and sold, except taxes levied by the State of Texas on the severance and production of the gas. Appellees also moved for summary judgment, asserting that no genuine issue of material fact existed regarding appellees' entitlement to deduct post-production marketing expenses. The trial court (1) granted appellees' motion for summary judgment, except appellees' request for attorney's fees, which was denied, (2) denied appellants' partial motion for summary judgment, and (3) rendered judgment that appellants take nothing.

In two issues, appellants contend the trial court erred in denying their motion for partial summary judgment and in granting appellees' motion for summary judgment. In three cross-issues, appellees contend that (1) the trial court erred in denying their request for attorney's fees and (2) conditionally, in the event of reversal, the trial court erred in denying their motion to transfer venue and upon remand, the case should be transferred to Bexar County.

Normally, we would address the venue issue first. However, because the issue is raised in a cross-issue conditioned upon a reversal, we first determine if any of appellants' issues present reversible error. *See Russell v. Panhandle Producing Co.,*

975 S.W.2d 702, 707–08 (Tex.App.-Amarillo 1998, no pet.).

**B. FINALITY OF JUDGMENT**

We first address the issue of the finality of the trial court's judgment. A judgment must be final before it can be appealed. *See Lehmann v. Har–Con Corp.,* 39 S.W.3d 191, 192 (Tex.2001). A judgment is not final unless it disposes of all pending parties and claims in the record. *Guajardo v. Conwell,* 46 S.W.3d 862, 863–64 (Tex.2001) (per curiam); *Garcia v. Comm'rs Court,* 101 S.W.3d 778, 784 (Tex. App.-Corpus Christi 2003, no pet.). There can be no presumption that a motion for summary judgment addresses all of the movant's claims. *McNally v. Guevara,* 52 S.W.3d 195, 196 (Tex.2001) (per curiam). In cases in which only one final and appealable judgment can be rendered, a judgment issued without a conventional trial is final for purposes of appeal if and only if it either states with unmistakable clarity that it is a final judgment or actually disposes of all claims and parties then before the court, regardless of its language. *Lehmann,* 39 S.W.3d at 204; *Garcia,* 101 S.W.3d at 784. The law does not require that a final judgment be in any particular form. *Lehmann,* 39 S.W.3d at 195; *Garcia,* 101 S.W.3d at 784. Therefore, whether a summary-judgment order is a final judgment must be determined from its language and the record in the case. *Lehmann,* 39 S.W.3d at 195; *Garcia,* 101 S.W.3d at 784.

Here the judgment at issue (1) is entitled "Final Judgment," (2) states that the "foregoing orders are dispositive of all claims and causes of action alleged by all parties, and that final judgment should be rendered," (3) provides that appellants take nothing, and (4) states that "[a]ll relief not expressly granted herein is hereby denied." Because the trial court's judg-

ment states "with unmistakable clarity that it is a final judgment,"[1] we conclude we have jurisdiction to consider this appeal.

### C. SUMMARY JUDGMENT

We review a trial court's grant or denial of a motion for summary judgment de novo. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985). A summary judgment movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 548; *Cigna Lloyds Ins. Co. v. Bradleys' Elec., Inc.,* 33 S.W.3d 102, 104 (Tex.App.-Corpus Christi 2000, pet. denied). Where the only question presented to the trial court was a question of law and both sides moved for summary judgment, the appellate court should render the judgment the trial court should have rendered. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988); *Bradleys' Elec., Inc.,* 33 S.W.3d at 104.

In their first issue, appellants contend the trial court erred by failing to apply relevant rules of law applicable to the interpretation of the intent of the parties to an unambiguous written contract. Appellants assert that the "net proceeds" language in the 1968 gas division order does not authorize deductions for post-production costs, other than State taxes, in computing appellants' gas royalties. Appellees argue that "net proceeds" means gross proceeds minus post-production marketing costs.

In construing an unambiguous oil and gas lease, our task is to ascertain the parties' intentions as expressed in the lease. *Heritage Res. v. NationsBank,* 939 S.W.2d 118, 121 (Tex.1996); *Sun Oil Co. v.*

*Madeley,* 626 S.W.2d 726, 727–28 (Tex. 1981). To achieve this goal, we examine the entire document and consider each part with every other part so that the effect and meaning of one part on any other part may be determined. *Heritage Res.,* 939 S.W.2d at 121; *Steeger v. Beard Drilling Inc.,* 371 S.W.2d 684, 688 (Tex. 1963). We presume that the parties to a contract intend every clause to have some effect. *Heritage Res.,* 939 S.W.2d at 121; *Ogden v. Dickinson State Bank,* 662 S.W.2d 330, 331 (Tex.1983). We give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense. *Heritage Res.,* 939 S.W.2d at 121; *Western Reserve Life Ins. Co. v. Meadows,* 152 Tex. 559, 261 S.W.2d 554, 557 (1953). We will enforce an unambiguous document as written. *Sun Oil Co.,* 626 S.W.2d at 728.

Royalty is commonly defined as the landowner's share of production, free of expenses of production. *Heritage Res.,* 939 S.W.2d at 121–22; *Delta Drilling Co. v. Simmons,* 161 Tex. 122, 338 S.W.2d 143, 147 (1960). Production costs are the expenses incurred in exploring for mineral substances and in bringing them to the surface. *Parker v. TXO Prod. Corp.,* 716 S.W.2d 644, 648 (Tex.App.-Corpus Christi 1986, no writ). Absent an express term to the contrary, these costs are not chargeable to the non-operating royalty interest. *Id.* Whatever costs are incurred *after* production of the gas or minerals are normally proportionately borne by both the operator and the royalty interest owners. *Id.* These post-production costs include taxes, treatment costs to render the gas marketable, compression costs to make it deliverable into a purchaser's pipeline, and trans-

---

1. *See Lehmann v. Har–Con Corp.,* 39 S.W.3d 191, 206 (Tex.2001) ("An order that expressly disposes of the entire case is not interlocutory merely because the record fails to show an adequate motion or other legal basis for the disposition.").

portation costs. *See Martin v. Glass,* 571 F.Supp. 1406, 1410 (N.D.Tex.1983), *aff'd,* 736 F.2d 1524 (5th Cir.1984); *Heritage Res.,* 939 S.W.2d at 122; *Parker,* 716 S.W.2d at 648; *Le Cuno Oil Co. v. Smith,* 306 S.W.2d 190, 193 (Tex.Civ.App.-Texarkana 1957, writ ref'd n.r.e.). The parties may, however, modify this general rule by agreement. *Heritage Res.,* 939 S.W.2d at 122.

The royalty provision language in the instant case is similar to that of the division order in *Judice v. Mewbourne Oil Co.,* 939 S.W.2d 133 (Tex.1996). In *Judice,* the division order provided, "Settlement for gas sold shall be based on the net proceeds realized at the well by you." *Id.* at 136. Holding that the trial court erred in concluding that the lessee was prohibited from deducting post-production compression costs from the proceeds received for the sale of gas, the supreme court explained that such language "unambiguously provides that royalty is based on net proceeds at the well. 'Net proceeds' expressly contemplates deductions, and we note once again that 'at the well' means before value is added by preparing the gas for market." *Id.* at 137.

Appellants contend that the law in force at the time of the execution of a contract governs its construction. Appellants rely on *Pan Am. Petroleum Corp. v. Southland Royalty Co.,* 396 S.W.2d 519 (Tex.Civ. App.-El Paso 1965, writ dism'd), for the definition of "net proceeds." The lease in *Pan American* contained the following royalty provision:

> To deliver to the credit of lessor, free of cost, in the pipe line to which they may connect their wells, the equal one-eighth part of all oil produced and saved from the leased premises and 1/8 of the net

proceeds of potash and other minerals in the mine.[2]

In construing this royalty provision, the El Paso Court of Appeals held that there were no costs to be deducted from the proceeds of the sale of the gas. We find this case to be distinguishable and unreliable for the following reasons.

First, unlike the gas in the instant case which requires compression to enable it to enter the sales pipeline, the gas in *Pan American* required no compression. The court, agreeing with the trial court below, explained, "... it is clear there are *no properly deductible items of expense* involved in the sale of the gas and distillate, as it is set forth without dispute that the gas flows from the wells by its own power, some thirty to sixty feet, to a separator and/or meter and pipeline installed by the purchaser." *Id.* at 524 (emphasis added). Further, the language "no properly deductible items of expense" used by the El Paso court indicates the possibility that there were other items of expense that would have been deductible.

Second, the El Paso court cited *Miller v. Speed,* 259 S.W.2d 235 (Tex.Civ.App.-Eastland 1952, no writ), for the proposition that "a royalty interest is one that is free of cost of producing, saving and preparing the product for market." *Pan Am.,* 396 S.W.2d at 524. However, after thoroughly reviewing the *Miller* decision, we conclude that this statement was taken out of context.

In *Miller,* the court was required to review the effect of a reservation in a deed and for an accounting of royalty accrued from the production of oil. The reservation provided, "[o]ut of the above described tract of land there is hereby expressly reserved to the vendor herein, its succes-

**2.** The Texas Supreme Court held that "other minerals" included gas. *Southland Royalty* *Co. v. Pan Am. Petroleum Corp.,* 378 S.W.2d 50, 54 (Tex.1964).

sors and assigns an undivided 1/24 of all the oil, gas and other minerals produced, saved and made available for market. . . ." *Miller*, 259 S.W.2d at 236. The issue to be determined was whether the reservation was of a mineral interest or a royalty interest. *See id.* at 237. Holding that the reservation was of a royalty interest, the Eastland Court of Appeals explained that "[t]he language of the reservation in the instant case, to-wit . . . together with the additional provisions of the reservation, clearly disclosed the intent to reserve 1/24 of the gross amount of oil produced . . . free of cost of producing, saving and preparing for market." *Id.* at 241–42. The reservation clause in *Miller* clearly provided that royalty was to be calculated after the minerals were "produced, saved and made available for market." No such language exists in the gas division order before us.

Third, the El Paso court relied on the "lessee's obligation to market the product" as a basis for its holding. *Pan Am.*, 396 S.W.2d at 524. However, the oil and gas lease before us expressly provides that the lessee "shall be under no obligation whatsoever to market said gas." Thus, there is no implied duty to market in the present case.

Finally, the royalty provision in *Pan American* expressly states that the royalty is "free of cost." *Id.* at 521. The gas division order in the present case is devoid of any such language.

Accordingly, we conclude that appellants' reliance on *Pan American* is misplaced. Not only are we not bound by a decision of the El Paso court, but we find *Pan American* to be thoroughly distinguishable.

 Appellants further argue that "net proceeds received" means proceeds derived from the sale of all natural gas, less only production and severance required to be paid. In support of this contention, appellants point to a provision in the gas division order which provides:

> You are authorized to deduct and pay to the proper taxing authorities all production and severance taxes required to be paid with respect to the interest of the undersigned in the gas produced from the above described land.

Appellants argue that Cologne drafted the division order providing itself authority to deduct taxes, and if it sought the right to deduct other costs, such costs would have been included in the division order. We disagree.

The Texas Tax Code imposes a tax on each producer of gas. *See* TEX. TAX CODE ANN. § 201.051 (Vernon 2002). "Producer" is defined as a person who takes gas from the earth or water, a person who owns, controls, manages, or leases a gas well, or a person who owns an interest, including a royalty interest, in gas or its value, whether the gas is produced by the person owning the interest or by another on his behalf by lease, contract, or other arrangement. TEX. TAX CODE ANN. § 201.001 (Vernon 2002). This tax is imposed directly upon the royalty owner and does not constitute a deduction from royalty. We conclude that the language authorizing Cologne to deduct and pay the taxes merely shifted the burden of paying the taxes to Cologne.

We conclude that the gas division order did not modify the general rule that post-production costs are proportionately borne by both the operator and the royalty interest owners. *See Heritage Res.*, 939 S.W.2d at 122. Because appellees were entitled to deduct compression and treatment costs in computing gas royalties owed to appellants, we hold the trial court did not err in granting appellees' motion for summary judgment on this ground. Appellants' first issue is overruled.

## D. PROOF OF REASONABLE EXPENSES

■ In their second issue, appellants contend the trial court erred by rendering a final take-nothing judgment against them on the summary judgment record without any proof of costs deducted from their royalty payments.

■ In their live petition, appellants sought an itemized accounting of the expenses deducted by appellees. After reviewing the record, we conclude that appellees did not raise this issue in their motion for summary judgment. In their motion for summary judgment, appellees only asserted that in computing appellants' gas royalty under the gas division order, they were entitled to deduct post-production or marketing expenses. When, as here, the trial court grants more relief than is requested in a motion for summary judgment, we must reverse and remand those issues after addressing the merits of the properly addressed claims. *See Bandera Elec. Co-op., Inc. v. Gilchrist,* 946 S.W.2d 336, 337 (Tex.1997). Accordingly, we sustain appellants' second issue.

## E. ATTORNEY'S FEES

■ In their first cross-issue, appellees contend the trial court erred in denying their request for reasonable attorney's fees pursuant to the Texas Declaratory Judgment Act ("the Act"). The Act allows a trial court to grant reasonable and necessary attorney's fees as are equitable and just. TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997). However, the prevailing party is not entitled to attorney's fees as a matter of law. *Sava Gumarska in Kemijska Industria D.D. v. Advanced Polymer Sci., Inc.,* 128 S.W.3d 304, 324 (Tex.App.-Dallas 2004, no pet.). The grant or denial of attorney's fees in a declaratory judgment action is within the discretion of the trial court, and its decision will not be reversed on appeal absent a clear showing that it abused its discretion. *Oake v. Collin County,* 692 S.W.2d 454, 455 (Tex.1985). In the exercise of its discretion, a trial court may decline to grant attorney's fees to either party, or the trial court may grant attorney's fees to the nonprevailing party. *Advanced Polymer Sci., Inc.,* 128 S.W.3d at 324. A review of the record shows no abuse of discretion. Appellees' first cross-issue is overruled.

## F. VENUE

Because we sustained appellants' second issue, which requires a reversal and remand, we must consider appellees' conditional cross-issue that the trial court erred by denying their motion to transfer venue.

■ An appellate court must conduct an independent review of the entire record to determine whether venue was proper in the ultimate county of suit. *Ruiz v. Conoco, Inc.,* 868 S.W.2d 752, 758 (Tex.1993); *see* TEX. CIV. PRAC. & REM.CODE ANN. § 15.064(b) (Vernon 2002); *see also Blalock Prescription Ctr., Inc. v. Lopez–Guerra,* 986 S.W.2d 658, 663 (Tex.App.-Corpus Christi 1998, no pet.). This review should be conducted like any other review of a trial court's findings of fact and legal rulings, except that the evidence need not be reviewed for factual sufficiency. *Ruiz,* 868 S.W.2d at 758; *Colonial County Mut. Ins. Co. v. Valdez,* 30 S.W.3d 514, 527 (Tex.App.-Corpus Christi 2000, pet. denied). If there is probative evidence to support the trial court's determination, even if the preponderance of the evidence is to the contrary, the appellate court must uphold the trial court's venue determination. *Valdez,* 30 S.W.3d at 527; *see also Ruiz,* 868 S.W.2d at 758. Although we view the record in the light most favorable to the trial court's ruling, we do not defer to the trial court's application of the law to

the facts of the case. *See Ruiz*, 868 S.W.2d at 758.

As a general rule, all suits must be brought (1) in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred, (2) in the county of the defendant's residence at the time the cause of action accrued if the defendant is a natural person, (3) in the county of the defendant's principal office if the defendant is not a natural person, or (4) in the county in which the plaintiff resided when the cause of action accrued. TEX. CIV. PRAC. & REM.CODE ANN. § 15.002(a) (Vernon 2002); *Madera Prod. Co. v. Atlantic Richfield Co.*, 107 S.W.3d 652, 657 (Tex.App.-Texarkana 2003, pet. denied). However, venue is mandatory in the county in which all or a part of property is located in (1) actions for recovery of real property or an estate or interest in real property, (2) actions for partition of real property, (3) actions to remove encumbrances from the title to real property, (4) actions for recovery of damages to real property, or (5) actions to quiet title to real property. TEX. CIV. PRAC. & REM.CODE ANN. § 15.011 (Vernon 2002); *Madera*, 107 S.W.3d at 657. A plaintiff must allege the following two "venue facts," and establish them by prima facie proof if specifically denied, to show that venue is mandatory under Section 15.011:(1) that the nature of the suit fits within those listed in Section 15.011; and (2) that all or part of the realty at issue is located in the county of suit. *In re Stroud Oil Prop., Inc.*, 110 S.W.3d 18, 24 (Tex.App.-Waco 2002, orig. proceeding). Because the venue provision of section 15.011 is mandatory, we strictly construe the statute. *Maranatha Temple, Inc. v. Enter. Prods. Co.*, 833 S.W.2d 736, 739 (Tex. App.-Houston [1st Dist.] 1992, no writ).

Appellants brought suit in Live Oak County based upon the mandatory provision of section 15.011 of the civil practice and remedies code, alleging that they are royalty owners under an oil and gas lease which covers land located in Live Oak County, and appellees have unlawfully deducted certain expenses in calculating their royalty payments. They argue that such an action constitutes one for recovery of damages to real property. Appellees counter by arguing that the nature of the suit is about the calculation and computation of royalty payments under a contract, not a dispute regarding ownership of appellants' royalty interests. We agree.

Appellants sought a declaratory judgment that the royalties should be computed without deducting any operating expenses, in accordance with the language of the gas division order. Neither party disputed the amount of land owned or the percentage interest owned by appellants. Nor did the parties dispute appellants' rights to a royalty interest. Because appellants only sought a declaration from the trial court regarding the amount of the royalty, title was not an issue in the lawsuit. *See Yzaguirre v. KCS Res., Inc.*, 47 S.W.3d 532, 543 (Tex.App.-Dallas 2000), *aff'd*, 53 S.W.3d 368 (Tex.2001); *see also Allison v. Fire Ins. Exch.*, 98 S.W.3d 227, 243 (Tex.App.-Austin 2002, pet. abated) (holding addition of "recovery of damages to real property" to section 15.011 does not expand the scope of the provision beyond question relating to recovery of real property or affecting title to "land"). Because title was not involved, we hold the mandatory venue provision of section 15.011 does not apply. Therefore, venue is governed by the general venue rule contained in section 15.002(a). *See* TEX. CIV. PRAC. & REM.CODE ANN. § 15.002(a) (Vernon 2002).

Appellants do not allege that the unlawful deduction from gross sales of unspecified operating expenses or their entitlement to royalty calculations based on

gross sales proceeds occurred in Live Oak County. The individual appellees, Robert Hausser and Lawrence J. Flume, Jr., reside in Bexar County, and Cologne Production Company has its principal office in Bexar County. Therefore, because section 15.011 does not control here, we hold that venue is proper in Bexar County. Appellees' cross-issue is sustained.

### G. Conclusion

We affirm the trial court's order granting appellees' motion for summary judgment declaring that appellees are entitled to deduct post-production marketing expenses. Because appellants' pleading requests an itemized accounting of these expenses and appellees did not move for summary judgment on that issue, the trial court granted more relief than was requested. Accordingly, we remand the accounting issue to the trial court for further proceedings. However, because we have sustained appellees' conditional cross-issue, we order the trial court to immediately transfer this case to the District Court of Bexar County for those proceedings.