

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-14-00012-CV

IN RE:  FREESTONE UNDERGROUND STORAGE, INC.,
RAY FUNDERBURK, AND NANCY FUNDERBURK

Original Mandamus Proceeding

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

O P I N I O N

Freestone Underground Storage, Inc., has filed a petition for a writ of mandamus requesting that this Court order the Honorable Charles C. "Brick" Dickerson, presiding judge of the 123rd Judicial District Court (having jurisdiction over Panola and Shelby Counties), to transfer this lawsuit to a district court having jurisdiction over Freestone County, Texas.

The controversy giving rise to this lawsuit involves a lease agreement between Freestone as lessee and Cavern Disposal, Inc., as lessor of a called 177.05-acre tract of land in Freestone County. This lease agreement, among other things, granted Cavern Disposal the right to use a saltwater disposal well on the premises and underground salt caverns during the term of the lease, the lease agreement being for an initial or primary term and containing provisions for renewals. When Freestone alleged that Cavern Disposal had not followed the proper steps to renew the lease agreement, Cavern Disposal filed a declaratory judgment action in Panola County. Freestone moved to transfer venue to Freestone County, and the trial court denied the motion to transfer. Freestone has filed this mandamus, seeking relief from the order denying transfer.

Venue concerns the propriety of prosecuting a suit involving a given subject matter and specific parties in a particular county. *See Kshatrya v. Tex. Workforce Comm'n*, 97 S.W.3d 825, 830 (Tex. App.—Dallas 2003, no pet.). Because it is possible under the venue rules for there to be more than one proper county vested with venue,[1] in such a circumstance, the plaintiff has the

---

[1] *Wilson v. Tex. Parks & Wildlife Dep't*, 886 S.W.2d 259, 260 (Tex. 1994).

2

first choice to fix venue in a county by filing the suit in the county of his choice (if venue is proper there).[2]

Freestone argues that mandatory venue lies in Freestone County under either Section 15.011 or 15.0115 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 15.011, 15.0115 (West 2002). Because the lease provides that certain acts can be performed in Panola County,[3] Cavern Disposal argues that this establishes permissive venue in Panola County;[4] it also argues that because neither of the above mandatory venue statutes cited by Freestone applies to the circumstances, Cavern Disposal's choice of venue should control.

We conclude that the trial court abused its discretion in denying Freestone's motion to transfer the case to Freestone County.

## I.      Standard of Review

Mandamus issues only when the mandamus record establishes both (1) a clear abuse of discretion or the violation of a ministerial duty imposed by law and (2) the absence of a clear and

---

[2]*See In re Masonite Corp.*, 997 S.W.2d 194, 197 (Tex. 1999) (orig. proceeding).

[3]We note venue selection clauses are mandatory absent a showing that enforcement would be unreasonable or unjust or a showing that the clause was invalid due to fraud or overreaching. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 793 (Tex. 2005); *cf. In re Fisher*, No. 12-0163, 2014 Tex. LEXIS 164 (Tex. Feb. 28, 2014) (orig. proceeding) (trial court abused its discretion in failing to enforce forum selection clause). The lease provides, "The obligations and undertakings of each of the parties to this Lease Agreement shall be performable at Carthage, Panola County, Texas." Neither party argues that this clause constitutes a venue selection clause.

[4]*See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.035 (West 2002) (permissive venue).

3

adequate remedy at law.[5] *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding).

Mandamus will issue only to correct a clear abuse of discretion or the violation of a ministerial duty. *Id.* at 839–40; *see Prudential Ins. Co.*, 148 S.W.3d at 135–36. A trial court clearly abuses its discretion when it reaches a decision "so arbitrary and unreasonable it amounts to a clear and prejudicial error of law or it clearly fails to correctly analyze or apply the law." *In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 888 (Tex. 2010) (orig. proceeding); *see Walker*, 827 S.W.2d at 839. "In a mandamus proceeding, we review a trial court's legal conclusions with limited deference because the trial court has 'no discretion in determining what the law is or applying the law to the facts.'" *In re Dillard Dep't Stores, Inc.*, 198 S.W.3d 778, 781 (Tex. 2006) (orig. proceeding) (per curiam) (quoting *Walker*, 827 S.W.2d at 840); *In re Frank Motor Co.*, 361 S.W.3d 628, 630–31 (Tex. 2012) (orig. proceeding).

Section 15.0642 of the Texas Civil Practice and Remedies Code provides that mandamus relief is the proper remedy to enforce a mandatory venue provision. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.0642 (West 2002). This statute has been consistently interpreted to mean that the inadequacy of an appellate remedy is not a prerequisite to mandamus relief. *See In re Mo. Pac. R.R. Co.*, 998 S.W.2d 212, 216 (Tex. 1999) (orig. proceeding); *In re City Nat'l Bank*, 257 S.W.3d 452, 454 (Tex. App.—Tyler 2008, orig. proceeding); *see also In re Lopez*, 372 S.W.3d

---

[5]The Texas Supreme Court has adopted a balancing test to determine whether a party has an adequate remedy by appeal. *See In re Prudential Ins. Co.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding); *In re AIU Ins. Co.*, 148 S.W.3d 109, 115 (Tex. 2004) (orig. proceeding). Under this balancing test, a remedy available on direct appeal is adequate when the detriments of mandamus review outweigh the benefits. *Prudential Ins. Co.*, 148 S.W.3d at 136.

174, 177 (Tex. 2012) (orig. proceeding) (per curiam); *In re Tex. Dep't of Transp.*, 218 S.W.3d 74, 76 (Tex. 2007) (orig. proceeding) (per curiam).

## II.    Analysis

### A.    Any Error Under Section 15.0115 Has Been Preserved, Assigned, and Adequately Briefed

Before we address the merits of this appeal, we must address a preliminary issue of whether a claim of mandatory venue pursuant to Section 15.0115 of the Texas Civil Practice and Remedies Code has been preserved and assigned for our review. Cavern Disposal argues that Freestone's appellate pleadings failed to contain a clear and concise argument that this mandatory venue provision applies; accordingly, it says that this argument has been "waived" by Freestone under Rule 38.1(i) of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 38.1(i). Cavern Disposal alleges that Freestone makes only a singular reference to this issue in its argument, a reference it alleges is somewhat tangential and insufficient to raise the issue. Cavern Disposal's allegation regarding the singularity of Freestone's reference to that provision is a gross misstatement.[6]   Freestone's petition makes seven different references to Section

---

[6]More to the point, Cavern Disposal's brief maintains, "Relators make only a single reference to this issue in its Argument, stating that 'Plaintiffs are a "tenant" and Defendants are "landlords" under a "lease" within the meaning of Section 15.0115.'" This is nothing less than an untruth. We caution counsel for the real party that an attorney owes a duty of candor to this Court and that the Texas Disciplinary Rules of Professional Conduct forbid a lawyer from making a false statement of material fact to a tribunal. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.03(a)(1); *Hartsell v. State*, 143 S.W.3d 233, 234 (Tex. App.—Waco 2004, no pet.) (per curiam); *United States Gov't v. Marks*, 949 S.W.2d 320, 327 (Tex. 1997); *see also* TEX. R. APP. P. 52.11 (providing for assessment of sanctions); *In re Lerma*, 144 S.W.3d 21, 27 (Tex. App.—El Paso 2004, orig. proceeding) (an appellate court may sanction an attorney for grossly misstating material fact in petition or response). While counsel's misrepresentation appears to be an intentional attempt to mislead this Court, we decline to exercise our discretion to assess sanctions at this time. We caution counsel, however, that we will not be so tolerant if such conduct is repeated.

5

15.0115 and nine references each to "landlord" and "tenant." Appropriate citations to authority and several pages of related argument were also included.

Arguments relating to the application of Section 15.0115 were preserved in the trial court,[7] assigned for our review, and adequately briefed. While "[a]ppellate briefs are to be construed reasonably, yet liberally, so that the right to appellate review is not lost by waiver,"[8] this case does not require us to construe the argument liberally to include the argument because the alleged error is clearly preserved, assigned, and adequately briefed. *See* TEX. R. APP. P. 38.1. Cavern Disposal's waiver argument is overruled.

### B.      The Essence of This Lawsuit Is Whether the Lease Has Terminated

In determining whether a mandatory venue statute applies to a declaratory judgment lawsuit, we examine the essence of the declaratory judgment action as pursued. *See In re Applied Chem. Magnesias Corp.*, 206 S.W.3d 114, 119 (Tex. 2006) (orig. proceeding). In this lawsuit, Cavern Disposal has filed a petition for declaratory judgment wherein it seeks a determination of whether it has complied with all of the requirements of the lease, including the provision of a notice of renewal.[9] Freestone filed a counterclaim seeking to remove an

---

[7]Although Cavern Disposal does not challenge preservation, we note the issue has been preserved for our review. Freestone's amended motion to transfer references Section 15.0115 and the section was extensively discussed at the hearing.

[8]*Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008).

[9]We note Cavern Disposal argues that Freestone failed to specially except or otherwise deny Cavern Disposal's venue facts including the allegations that (1) the lease provides for performance in Panola County, (2) the lease was executed in Panola County, (3) the lease specifically requires payments, demands, or notices be made in Panola County, and (4) Cavern Disposal's case asserts a claim of compliance with obligations under the Lease Agreement. Construing pleadings and interpretation of unambiguous lease terms are issues of law. *See Hendee v. Dewhurst*, 228 S.W.3d 354, 368 (Tex. App.—Austin 2007, pet. denied) (pleadings are construed as matter of law); *Guerrero v.*

encumbrance on title. Both arguments depend on the determination of a singular issue—whether the lease terminated.

The lease provides that it "shall continue for a primary term of twenty (20) years" with the provision that the lease may be renewed by the lessee "for successive periods of five years." The lease also provides that a notice of renewal must be given "at least thirty (30) days prior to the expiration of the primary term or any renewal thereof." It goes on to say that notice of renewal can be accomplished by "any reasonable means." The parties dispute whether adequate notice of renewal was provided. Thus, the essence of the dispute in this case concerns whether the lease has terminated.

### C. The Issue of Whether the Operative Instrument Is a Mineral Lease or a Lease of Real Property is Not Determinative

The next issue is whether we are dealing with a mineral lease or a lease of real property.

> In Texas it has long been recognized that an oil and gas lease is not a "lease" in the traditional sense of a lease of the surface of real property. In a typical oil or gas lease, the lessor is a grantor and grants a fee simple determinable interest to the lessee, who is actually a grantee. Consequently, the lessee/grantee acquires ownership of all the minerals in place that the lessor/grantor owned and purported to lease, subject to the possibility of reverter in the lessor/grantor. The lessee's/grantee's interest is "determinable" because it may terminate and revert entirely to the lessor/grantor upon the occurrence of events that the lease specifies will cause termination of the estate.

*Natural Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 192 (Tex. 2003) (citations omitted).

The lease in question contains elements of both a mineral lease and a lease of real property. The lease grants Cavern Disposal the right to "investigate, explore, prospect, drill,

---

*Guerra*, 165 S.W.3d 778, 782 (Tex. App.—San Antonio 2005, no pet.) (unambiguous contracts will be interpreted as matter of law). Therefore, it is unnecessary to determine the effect of Freestone's failure to deny Cavern Disposal's venue facts.

mine for, produce, remove and dispose of all salt and salt deposits[,] . . . construct, operate, enlarge and maintain in the subsurface of said property caverns[,] . . . store any type of substances . . . [, and] dispose of all substances . . . ." The lease also provides that Cavern Disposal "shall have the right of exclusive use, possession, occupancy and exclusion of such area." Freestone retained a right to use the "surface of the leased premises, excluding buildings and equipment, as are consistent with [Cavern Disposal's] uses of the leased premises" and "the right of maintaining its office in the mobile home currently located on the premises." Cavern Disposal is also granted "the exclusive right to use such buildings, ponds and pits as are located on the leased premises."

As discussed below, both mandatory venue statutes relied upon by Freestone require the case to be transferred to Freestone County. If the lawsuit concerns whether the mineral estate has reverted to Freestone, Section 15.011 would apply. Otherwise, the lawsuit concerns a suit between a landlord and tenant under Section 15.0115. Since both statutes require transfer to Freestone County, it is not necessary for us to determine whether this lawsuit concerns an interest in real property (i.e., a determinable fee for a term with a possibility of reverter), or a suit between a landlord and tenant. In either event—or, as here, in both events—the suit belongs in Freestone County.

**D.      If This Lawsuit Concerns a Reversion of a Mineral Estate, Section 15.011 Requires Transfer to Freestone County**

Cavern Disposal argues that "ownership of the underlying property is irrelevant to Cavern Disposal's cause of action" and Section 15.011 does not apply to this lawsuit. This

8

lawsuit concerns whether the lease has terminated. If the lease is a mineral lease, the termination of the lease would result in the reversion of a fee in realty and, therefore, would concern an interest in real property. Section 15.011 of the Texas Civil Practice and Remedies Code (entitled "Land") provides,

> Actions for recovery of real property or an estate or interest in real property, for partition of real property, to remove encumbrances from the title to real property, for recovery of damages to real property, or to quiet title to real property shall be brought in the county in which all or a part of the property is located.

*See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.011.

The Texas Supreme Court has recognized, however, that Section 15.011 does not apply to all disputes that can arise over the terms in a mineral lease. *Yzaguirre v. KCS Res., Inc.*, 53 S.W.3d 368, 371 (Tex. 2001). Cavern Disposal argues that this lawsuit concerns only the terms of the lease and, similar to *Yzaguirre*, the provisions of Section 15.011 do not apply. *Yzaguirre* concerned royalty payments, and the Texas Supreme Court concluded that the issue of the correct amount of royalty payments under such a lease did "not involve recovering real property or quieting title."[10] *Id.* The primary dispute in the instant lawsuit revolves around the issue of whether Cavern Disposal properly extended the lease; if it did not, the lease would have terminated under its own terms. Since it involves the actual continued existence of the lease as a property interest, this case is distinguishable from *Yzaguirre*.

Unlike royalty payments, the termination of a mineral lease results in the transfer of the fee simple of the mineral estate—a claim on property which is clearly an interest in real property.

---

[10]*Yzaguirre* interpreted a former version of Section 15.011. As noted in *Yzaguirre*, Section 15.011 has since been amended to permit "recover[y of] damages to real property." *Yzaguirre*, 53 S.W.3d at 371 n.1. It is not necessary for us to determine the effect of this amendment on *Yzaguirre*.

9

Similar to *In re Applied Chemical Magnesias Corp.*, this case concerns the quieting of title to or the recovery of real property. *In re Applied Chem. Magnesias Corp.*, 206 S.W.3d 114, 119 (Tex. 2006) (orig. proceeding). We agree with the Houston (First) District and the San Antonio Courts of Appeal that the termination of a mineral lease concerns the quieting of title or the recovery of real property. *See In re Evolution Petroleum Co.*, 359 S.W.3d 710, 714 (Tex. App.—San Antonio 2011, orig. proceeding) (essence of dispute is whether primary term of mineral lease had expired, which involves an interest in real property); *Bracewell v. Fair*, 638 S.W.2d 612, 615 (Tex. App.—Houston [1st Dist.] 1982, no writ) (mandatory venue statute applies to determine whether mineral lease terminated). If the lease in this case is a mineral lease, the dispute concerns whether the fee simple reverted to Freestone; therefore, Section 15.011 applies.

**E.** **If this Lawsuit Concerns a Lease of Real Property, Section 15.0115 Requires Transfer to Freestone County**

As noted above, the lease at the center of this controversy contains elements of both a mineral lease and a lease of real property. If this lease is not a mineral lease, the dispute would not concern an interest in real property pursuant to Section 15.011. However, this case would still be distinguishable from *Yzaguirre*, 53 S.W.3d at 371. Although *Yzaguirre* unquestionably had its origins in a mineral lease, it concerned the determination of the price to pay for gas which had been severed from the realty. Not only was it a mineral lease, it did not question the validity of the lease itself. Accordingly, it involved neither the recovery of title to real estate nor an issue of quieting title. Further, *Yzaguirre* did not center on a landlord/tenant conflict.

10

Although this controversy involves the continued existence of a lease (apart from the mineral lease portion of the document), it involves a dispute between a landlord and a tenant. Therefore, another mandatory venue statute applies if this lease is not a mineral lease. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.0115. This requires disputes between landlords and tenants to be resolved in the county in which the demised property is located.

This very question was discussed at the trial level, and Cavern Disposal convinced the trial court that this dispute is not one arising between a landlord and a tenant. Section 15.0115 provides,

> (a)     Except as provided by another statute prescribing mandatory venue, a suit between a landlord and a tenant arising under a lease shall be brought in the county in which all or a part of the real property is located.

> (b)     In this section, "lease" means any written or oral agreement between a landlord and a tenant that establishes or modifies the terms, conditions, or other provisions relating to the use and occupancy of the real property that is the subject of the agreement.

*See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.0115. Noting that Section 15.0115 does not define landlord or tenant, Cavern Disposal invites us to engraft a definition the Texas Property Code employs or the Texas Utility Code uses when speaking of leases of buildings.[11]

In support of this argument, Cavern Disposal refers us to the definitions contained in Section 92.001 of the Texas Property Code and Section 184.051 of the Texas Utilities Code. *See* TEX. PROP. CODE ANN. § 92.001 (West 2007); TEX. UTIL. CODE § 184.051 (West 2007). These

---

[11]We note Cavern Disposal may qualify as a tenant even under its proposed narrow definition. As noted above, Freestone's retention of the surface estate excluded "buildings and equipment," and the lease grants Cavern Disposal "the exclusive right to use such buildings . . . as are located on the leased premises." Because neither party argues that Cavern Disposal has leased buildings, we will not address whether Cavern Disposal qualifies as a tenant even under its proposed narrow definition.

11

definitions are limited to buildings because they have been specifically tailored for the purposes of each Code. Chapter 92 is the chapter of the Texas Property Code dealing exclusively with residential leases and, as such, has a definition of "landlord" and "tenant" specifically tailored for residential leases. The Texas Utility Code deals exclusively with the provision of utility services provided to buildings or other improvements to real property, and the definitions used there are specifically designed to be plugged into circumstances involving utility service provision. We believe that if restrictive definitions of the terms "landlord" and "tenant" were required for a proper interpretation or application of Chapter 15 of the Texas Civil Practice and Remedies Code, the Legislature would have provided such restrictive definitions. Accordingly, we decline the invitation to apply these narrow definitions to the Texas Civil Practice and Remedies Code.

The terms "landlord" and "tenant" have traditionally been defined much broader than those definitions urged by Cavern Disposal. Black's Law Dictionary defines "landlord" as "[o]ne who leases real property to another" and defines "tenancy" as "[t]he posssession or occupancy of land under a lease; a leasehold interest in real estate." BLACK'S LAW DICTIONARY 957, 1603 (9th ed. 2009). The terms "landlord" and "tenant" are commonly used in the context of commercial leases and leases of farm or ranch land. In fact, the Waco Court of Appeals has used the terms "landlord" and "tenant" to describe a lease for a salt water disposal well. *See In re Royalco Oil & Gas Corp.*, 287 S.W.3d 398, 399 (Tex. App.—Waco 2009, orig. proceeding).

If this lease is not a mineral lease, Cavern Disposal leased real property from Freestone. Cavern Disposal qualifies as a tenant, and Freestone qualifies as a landlord. Because this is a dispute over the terms of a lease between a landlord and a tenant, venue was mandatory in

12

Freestone County as prescribed in Section 15.0115 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.0115.

## III. Conclusion

Although the lease in question contains elements of both a mineral lease and a lease of real property, it is not necessary for us to decide whether it is one type of lease to the exclusion of the other. Either the lease is a mineral lease or it is a lease of real property or it is a combination of the two. Under any circumstance, mandatory venue is in Freestone County. If the lease is a mineral lease, Section 15.011 applies; if it is a true lease of real estate, Section 15.0115 applies; in either event and under both sections of the statute, mandatory venue lies in Freestone County. The trial court's denial of the motion to transfer amounts to a clear abuse of discretion, and Freestone is entitled to mandamus relief. *See Walker*, 827 S.W.2d at 839.

We conditionally grant the writ of mandamus and direct the trial court to transfer venue to Freestone County. The writ will issue only if the trial court fails to comply. Our previous stay order is lifted.

Bailey C. Moseley
Justice

Date Submitted:     March 13, 2014
Date Decided:       March 14, 2014

13