

**NUMBER 13-15-00184-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

PROSPERITY ENERGY
CORPORATION,                                                    Appellant,

v.

TERFAM FAMILY, LTD.
AND LAMBERT QUARTEY,                                           Appellees.

On appeal from the 93rd District Court
of Hidalgo County, Texas.

NUMBER 13-15-00234-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN RE PROSPERITY ENERGY CORPORATION

## On Petition for Writ of Mandamus.

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Longoria
### Memorandum Opinion by Justice Longoria[1]

By petition for writ of mandamus and appeal, Prosperity Energy Corporation ("Prosperity") challenges an order denying its motion to transfer venue from Hidalgo County to Denton County based on the mandatory venue provision concerning real property and the statute allowing interlocutory appeals for venue determinations in any case involving multiple plaintiffs.[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.011

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so. When granting relief, the court must hand down an opinion as in any other case."); *id.* R. 47.4 (distinguishing opinions and memorandum opinions).

[2] This appeal and original proceeding arise from trial court cause number C-1058-14-B in the 93rd District Court of Hidalgo County, Texas, the Honorable Rudy Delgado presiding.

2

(West, Westlaw through Ch. 46 2015 R.S.); *id.* § 15.003(b) (West, Westlaw through Ch. 46 2015 R.S.). We conditionally grant Prosperity's petition for writ of mandamus in cause number 13-15-00234-CV and dismiss Prosperity's appeal in cause number 13-15-00184-CV.

## I. BACKGROUND

Terfam Family, Ltd. ("Terfam") and Lambert Quartey brought suit against Prosperity in Hidalgo County on grounds that Prosperity had failed to pay them amounts due under Lease Fund Agreements ("Agreements") and Addendums that they had executed with Prosperity. According to their original petition, the Agreements and Addendums required Terfam and Quartey to each pay $157,500 to Prosperity and Prosperity was to have repaid them those sums before May 1, 2013, but Prosperity "ha[d] not made payment on the outstanding debts due to [them] pursuant to the terms" of the Agreements. Terfam and Quartey alleged that venue was proper in Hidalgo County, Texas because "a substantial part of the event or omissions" that formed the basis of the suit occurred there. *See id.* § 15.002(a) (West, Westlaw through Ch. 46 2015 R.S.). Terfam and Quartey sought damages of "over $500,000 but not more than $1,000,000." They also sought attorney's fees, costs of suit, interest as provided by the Agreements and Addendums, and "[s]uch other and further relief to which [they] may be justly entitled."

The Agreements, which are separate as to Terfam and Quartey but substantially identical, state that the "parties are desirous of acquiring oil and gas leases in Denton County, Texas." The Agreements provide that Terfam and Quartey would each pay Prosperity $157,500, which Prosperity would use to purchase 334 acres in the Whites

3

Creek and Bolivar leases in Denton County. Prosperity would then "attempt" to sell the leases acquired on the property on such terms as "deem[ed] appropriate," provided that the sales price for the leases would be sufficient to reimburse Terfam and Quartey for the amounts due under the Agreements, $157,500, plus 10% interest, for a total amount of $173,250.

In addition to reimbursing Terfam and Quartey, Prosperity agreed to give them "in the form of an oil and gas assignment a one percent (1%) working interest, based on a (75%) net revenue lease." The Agreements state that the 1% working interest "is considered remuneration for funding the Lease Fund Agreement" and specify that after drilling certain wells, the one percent working interest would be subject to lease operating expenses under a standard joint operating agreement. Prosperity would determine the operator of the wells, and Terfam and Quartey would have the right of first refusal to acquire an additional 1% working interest in the remaining wells to be drilled on the property. The Agreements provide that when Terfam and Quartey fund the agreement, the ensuing assignment of the leases would bear their names as "partial" owners. The Agreements also contemplate the execution of assignments with regard to the property and state that Terfam and Quartey would execute and deliver assignments regarding the 334 acres when Prosperity paid Terfam and Quartey $173,250 each. The unexecuted form assignments, which were attached to the Agreements as exhibits, state that Terfam and Quartey assigned or sold Prosperity an undivided 100% leasehold or working interest in the "lands, and oil and gas leases described herein" and that Prosperity sold Terfam and Quartey an "undivided 50% leasehold or working interest in the lands, and oil and

4

gas leases." The Agreements specifically provided that the relationship between the parties would be "solely that of tenants-in-common." The term of the Agreements was "for one year or at the end of the Prosperity offering to investors whichever comes first."

The parties thereafter executed Addendums to the Agreements for the purpose of clarifying and adding to the terms of the Agreements. The Addendums are also separate but substantially identical. Prosperity agreed to reimburse Terfam and Quartey $157,500 plus ten percent per year from January 1, 2011 until paid, but not later than May 1, 2013. In addition to the 1% working interest in the four productive wells that had been drilled in Denton County, Prosperity agreed to assign Terfam and Quartey an additional 1.5% working interest in those wells. Prosperity agreed to begin immediate reimbursement of the $157,500 upon execution of the Addendums. The Addendums delineated further specific payment arrangements and amounts and specified that if Prosperity had not paid the balance of the principal and interest on or before May 1, 2013, the "default" date, then the interest charged would increase to 15% on the unpaid balance of principal and Prosperity would assign an additional 0.50% working interest to Terfam and Quartey on the first well drilled on the Whites Creek lease.

Prosperity filed a motion to transfer the lawsuit to Denton County on grounds that the Agreements granted Terfam and Quartey interests in oil and gas working interests and net revenue lease interests for real property located in Denton County, thus making the entire action subject to the mandatory venue provision pertaining to land. *See id.* § 15.011. Prosperity further argued that its principal office was located in Dallas County, Texas, and that all relevant events pertaining to the suit had occurred there. *See id.* §

5

15.002(a)(3). Prosperity supported its motion to transfer venue to Denton County with an affidavit from Rick Parmer, the CEO of Prosperity, who stated in relevant part that:

> The purpose of the lease fund agreement was to acquire oil and gas leases in Denton County, Texas. In return, Plaintiffs were to be paid monies and be granted interests in the oil and gas leases to be acquired. I did not in my individual or representative capacity travel to or meet any representative of Plaintiffs in Hidalgo County, Texas. The negotiations with Plaintiffs were conducted in Dallas County, Texas. All other communications were done by phone or by email. No Prosperity representative including myself were ever in Hidalgo County, Texas when we communicated with any representative of Plaintiffs. Prosperity's principal office is in Dallas County, Texas.

By response to the motion to transfer venue, Terfam and Quartey alleged that they did not seek to recover real property, but instead sought "only money damages under breach of contract." They further argued that the relevant events pertaining to the lawsuit occurred in Hidalgo County and supported their response to the motion to transfer with affidavits from Quartey and Onuwa Terry, the president of OMEE, LLC, a Texas Limited Liability Company which is the general partner of Terfam. By affidavit, Terry testified that Prosperity's representatives solicited him to invest in their company through a phone call to him when he was in McAllen, Texas, and that all negotiations with Prosperity occurred in Hidalgo County. Terry stated that the Addendum was entered "with the understanding" that Prosperity would make payments required by the Addendum to Terfam in McAllen, that "the agreement for payment was that payment was to be made to Terfam in McAllen, Texas," and Prosperity made three payments to Terfam by wire-transfer to Terfam's McAllen bank account.

Quartey provided similar testimony. Quartey asserted that Prosperity's representatives solicited him to invest in the company by a telephone call placed to him

6

in McAllen, Texas, and that he never negotiated with Prosperity's representatives anywhere but Hidalgo County. Quartey asserted that he signed the Agreement and the Addendum in McAllen, Texas. Quartey stated that the Addendum was entered "with the understanding" that Prosperity would make payments required by the Addendum to Quartey in McAllen, that "the agreement for payment was that payment was to be made to me in McAllen, Texas," and Prosperity made three payments to Quartey by wire-transfer to Quartey's McAllen bank account.

Prosperity's motion to transfer venue was set for hearing on June 25, 2014, but was reset because the court reporter was absent. The motion to transfer was again set for July 30, 2014, but the parties passed that hearing by agreement. The hearing was reset for October 13, 2014. That day, counsel for Terfam and Quartey appeared for the hearing, but counsel for Prosperity did not. On October 15, 2014, the trial court denied Prosperity's motion to transfer venue. Thereafter, Prosperity alleged that it had not received notice of the October 13, 2014 hearing or the trial court's order denying transfer. The trial court concluded that Prosperity failed to receive notice and set aside and vacated its order denying Prosperity's motion to transfer venue.

On November 18, 2014, Prosperity filed a first amended motion to transfer venue. The amended motion reasserts the arguments made previously but also avers that Terfam and Quartey had filed "affidavits of equitable title" to the working interests under the agreements at issue in Denton County. The affidavits, which are separate but substantially identical, provide, in relevant part:

> 4. In accordance with the Lease Fund Agreement, [Terfam and Quartey] paid to Prosperity $157,500.00. [The] money was used to

purchase oil and gas leases which were supposed to have been purchased in [the name of Terfam and Quartey] so that [Terfam and Quartey] would own the oil and gas leases. Ownership was in the nature of a mortgage until [the] loan[s] [were] paid back to [Terfam and Quartey], at which time [Terfam and Quartey were] to execute an assignment of the interests back to Prosperity.

5. Prosperity apparently acquired the leases on the 334 acres but did not acquire the leases in [Terfam and Quartey's] name[s] but, instead, acquired the leases in the name of Prosperity and never executed the assignment to [Terfam and Quartey] of Prosperity's interest to secure the loan.

6. Prosperity has failed to reimburse [Terfam and Quartey] for the money which [Terfam and Quartey] provided to purchase the leases, and still owes [Terfam and Quartey each] in excess of $100,000.00.

7. [Terfam and Quartey are] therefore, filing [these] affidavit[s] to establish [Terfam and Quartey's] equitable ownership interest in the leases, and [Terfam and Quartey are] entitled to have the leases assigned to [Terfam and Quartey] by Prosperity since [Terfam and Quartey are each] the owner[s] of an undivided 50% interest in the leases. . . .

8. By the filing of this affidavit, [Terfam and Quartey are] putting the public on notice that [Terfam and Quartey], rather than Prosperity, are the owners of the oil and gas leases on the 334 net mineral acres described in the exhibits attached hereto.

On December 19, 2014, Prosperity filed a brief in the trial court in support of its first amended motion to transfer venue. On December 24, 2014, Terfam and Quartey filed a response to Prosperity's brief in which they contended, inter alia, that they had "already received their one percent working interests in wells and now seek to recover the money that is owed them." Terfam and Quartey asserted that:

The Lease Fund Agreement also required the Defendant to acquire the oil and gas leases in the name of Plaintiffs as collateral for their loan and the Lease Fund Agreement provided the form to be used in assigning and reassigning the leases. Exhibit C to the Lease Fund Agreement was an assignment form where by Prosperity would have assigned to each Plaintiff

8

an undivided fifty percent of the leasehold or working interest in the lease. The Lease Fund Agreement also provided in paragraph seven that when Prosperity paid Plaintiff the $173,250 constituting a hundred percent of the required funds to be repaid by Prosperity that each Plaintiff would promptly, upon receipt of the moneys, execute and deliver to Prosperity an assignment of the leasehold interest and that form was Exhibit B to the Lease Fund Agreement. Prosperity never assigned any interest in the leasehold to each of the Plaintiffs and in addition never repaid Plaintiffs the money owed them. Consequently, each Plaintiff filed an affidavit in Denton County asserting their ownership interest in the leases so that Prosperity could not dispose of the leases and cut off the Plaintiffs['] rights. If and when Prosperity ever pays each of the Plaintiffs the moneys that is owed to them, then the Plaintiffs will execute the assignment (Exhibit B) to the Lease Fund Agreement returning to Prosperity the Plaintiffs' interest in the leasehold. However, this is not a part of this lawsuit. This suit is to collect the money that is owed but, it does not seek to recover any interest in real property.

On March 11, 2015, counsel for Prosperity sent a letter to the trial court requesting it to issue a ruling on Prosperity's amended motion to transfer venue. On April 9, 2015, the trial court denied the amended motion to transfer venue "having considered the evidence and arguments of counsel." This appeal and original proceeding ensued, and these causes were consolidated for the purposes of briefing.

By one issue, Prosperity asserts that the trial court abused its discretion in denying Prosperity's motion to transfer venue to Denton County. Prosperity asserts that the present case for breach of the Agreements and Addendums has some effect on an interest in real property because the Agreements define the relationship of the parties as "tenants-in-common" and because Terfam and Quartey's equitable title affidavits, which were recorded in Denton County, state they own the Denton County oil and gas leases as a result of Prosperity's alleged breach. Terfam and Quartey filed a consolidated response to the petition for writ of mandamus and appellee's brief.

9

## II. Mandamus

The general rule is that a venue ruling is not a final judgment ripe for appeal. *See id.* § 15.064(a) (West, Westlaw through Ch. 46 2015 R.S.); TEX. R. CIV. P. 87(6) ("There shall be no interlocutory appeals from such determination.").[3] Section 15.0642 of the civil practice and remedies code, however, provides for mandamus relief to enforce certain mandatory venue provisions. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.0642 (West, Westlaw through Ch. 46 2015 R.S.); *In re Transcon. Realty Investors*, 271 S.W.3d 270, 271 (Tex. 2008) (orig. proceeding) (per curiam); *In re Tex. Dep't of Transp.*, 218 S.W.3d 74, 76 (Tex. 2007) (orig. proceeding); *In re Freestone Underground Storage, Inc.*, 429 S.W.3d 110, 113 (Tex. App.—Texarkana 2014, orig. proceeding). When a relator seeks to enforce a mandatory venue provision, the relator is not required to prove that it lacks an adequate appellate remedy and is only required to show that the trial court clearly abused its discretion by failing to transfer the case. *See In re Lopez*, 372 S.W.3d 174, 176 (Tex. 2012) (orig. proceeding) (per curiam); *In re Mo. Pac. R.R.*, 998 S.W.2d 212, 215–16 (Tex. 1999) (orig. proceeding); *In re Signorelli Co.*, 446 S.W.3d 470, 473 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding). The only issue presented in such cases is whether the trial court properly interpreted the mandatory venue provision. *In re Transcon. Realty Investors*, 271 S.W.3d at 270; *In re Tex. Ass'n of Sch. Bds., Inc.*, 169 S.W.3d 653, 656 (Tex. 2005) (orig. proceeding).

---

[3] In a suit involving more than one plaintiff, however, we have interlocutory appellate jurisdiction to review a trial court's determination of whether "a plaintiff did or did not independently establish proper venue." TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(b)(1) (West, Westlaw through Ch. 46 2015 R.S.); *Ramirez v. Collier, Shannon, Scott, PLLC*, 123 S.W.3d 43, 50 (Tex. App.—Houston [1st Dist.] 2003, pet. denied); *see also Tex. Windstorm Ins. Ass'n v. Boyle*, No. 01-13-00874-CV, 2014 WL 527574, at *1 (Tex. App.—Houston [1st Dist.] Feb. 6, 2014, no pet.) (mem. op.); *Shamoun & Norman, LLP v. Yarto Int'l Grp., LP*, 398 S.W.3d 272, 286–87 & 286 n.18 (Tex. App.—Corpus Christi 2012, pet. dism'd) (mem. op.).

### III. STANDARD OF REVIEW

In an original proceeding regarding the application of mandatory venue, the appellate court reviews the trial court's ruling on a motion to transfer for an abuse of discretion. *In re Applied Chem. Magnesias Corp.*, 206 S.W.3d 114, 117 (Tex. 2006) (orig. proceeding); *In re Signorelli Co.*, 446 S.W.3d at 473. A trial court has no discretion in determining what the law is or in applying the law to the facts. *See In re Mo. Pac. R.R. Co.*, 998 S.W.2d at 216. A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam); *In re Fort Bend Cnty.*, 278 S.W.3d 842, 843 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding). In reviewing a venue decision, the appellate court must conduct an independent review of the entire record, including the trial on the merits if applicable, to determine whether any probative evidence supports the trial court's venue decision. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.064(b); *Wilson v. Tex. Parks & Wildlife Dep't,* 886 S.W.2d 259, 261 (Tex. 1994).

### IV. MOTION TO TRANSFER VENUE

Venue may be proper in more than one county under the general, mandatory, or permissive venue rules. *See GeoChem Tech Corp. v. Verseckes*, 962 S.W.2d 541, 544 (Tex. 1998). The plaintiff is given the first choice of the venue in which to file suit, but upon challenge by the defense, bears the burden to prove venue is maintainable in that county. TEX. R. CIV. P. 87(2)(a); *In re Masonite Corp.*, 997 S.W.2d 194, 197 (Tex. 1999) (orig. proceeding); *GeoChem*, 962 S.W.2d at 544 The plaintiff may file suit in any

11

permissible county or, in the case of mandatory venue provisions, in the county mandated by statute. *Wilson*, 886 S.W.2d at 260; *Kshatrya v. Tex. Workforce Comm'n & Riddle Techs.*, 97 S.W.3d 825, 830 (Tex. App.—Dallas 2003, no pet.).

A defendant raises the question of proper venue by objecting to a plaintiff's venue choice through a motion to transfer venue. *See* TEX. R. CIV. P. 86. A defendant may move to transfer venue on grounds that mandatory venue lies in a different county. *Id.* R. 86(3)(b). A party must establish mandatory venue by prima facie proof. *Id.* R. 87(3)(c). If a plaintiff's chosen venue rests on a permissive venue statute and the defendant files a meritorious motion to transfer based on a mandatory venue provision, the trial court must grant the motion. *Wichita Cnty. v. Hart*, 917 S.W.2d 779, 781 (Tex. 1996); *Spin Doctor Golf, Inc. v. Paymentech, L.P.*, 296 S.W.3d 354, 357 (Tex. App.—Dallas 2009, pet. dism'd); *Morris v. Tex. Parks & Wildlife Dep't*, 226 S.W.3d 720, 723 (Tex. App.—Corpus Christi 2007, no pet.).

## V. ANALYSIS

Certain kinds of suits involving land must be filed in the county where all or part of the property is located:

> Actions for recovery of real property or an estate or interest in real property, for partition of real property, to remove encumbrances from the title to real property, for recovery of damages to real property, or to quiet title to real property shall be brought in the county in which all or part of the property is located.

TEX. CIV. PRAC. & REM. CODE ANN. § 15.011; *see In re Applied Chem. Magnesias Corp.*, 206 S.W.3d at 117; *In re Signorelli Co.*, 446 S.W.3d at 473. Because of its mandatory nature, we must strictly construe section 15.011 and will not hold that it applies unless the

12

suit is clearly within one of the categories set out in the statute. *In re Signorelli Co.*, 446 S.W.3d at 474; *Cartwright v. Cologne Prod. Co.*, 182 S.W.3d 438, 448 (Tex. App.—Corpus Christi 2006, pet. denied); *Maranatha Temple, Inc. v. Enter. Prods. Co.*, 833 S.W.2d 736, 739 (Tex. App.—Houston [1st Dist.] 1992, writ denied). However, if a mandatory venue provision applies to any claims or causes of action, then all claims and causes of action arising from the same transaction must be brought in the county of mandatory venue. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.004 (West, Westlaw through Ch. 46 2015 R.S.); *In re Signorelli Co.*, 446 S.W.3d at 474; *Airvantage, L.L.C. v. TBAN Props. # 1, L.T.D.*, 269 S.W.3d 254, 257 (Tex. App.—Dallas 2008, no pet.).

Two venue facts must be established to show that venue is mandatory under section 15.011: (1) that the nature of the suit fits within those listed in section 15.011; and (2) that all or part of the realty at issue is located in the county where venue is sought. *In re Signorelli Co.*, 446 S.W.3d at 473; *In re Lemons*, 281 S.W.3d 643, 646 (Tex. App.—Tyler 2009, orig. proceeding); *Airvantage, L.L.C.*, 269 S.W.3d at 258; *In re Stroud Oil Props., Inc.*, 110 S.W.3d 18, 25 (Tex. App.—Waco 2002, orig. proceeding). Oil and gas leases are an interest in real property. *See Yzaguirre v. KCS Res., Inc.*, 53 S.W.3d 368, 369 (Tex. 2001). It is undisputed that the Agreements and Addendums concern property located in Denton County; thus, the sole issue herein is whether the suit falls within the parameters of section 15.011.

The Texas Supreme Court has directed us to look to the "essence" of a dispute to determine whether it involves an interest in real property so as to invoke mandatory venue under the statute. *See In re Applied Chem. Magnesias Corp.*, 206 S.W.3d at 119.

13

Accordingly, we consider whether the "substance of the dispute" falls within the scope of mandatory venue under the statute. *See Yzaguirre*, 53 S.W.3d at 371. Stated otherwise, we examine "the heart of the controversy" and "the controlling issue" in the case. *Renwar Oil Corp. v. Lancaster*, 276 S.W.2d 774, 776 (Tex. 1955).

The "ultimate or dominant purpose" of a suit determines whether a particular suit falls under a mandatory venue statute and not "how the cause of action is described by the parties." *Bracewell v. Fair*, 638 S.W.2d 612, 615 (Tex. App.—Houston [1st Dist.] 1982, no writ); *see In re Group 1 Realty, Inc.*, 441 S.W.3d 469, 473 (Tex. App.—El Paso 2014, orig. proceeding); *In re Signorelli Co..*, 446 S.W.3d at 474; *In re City Nat'l Bank*, 257 S.W.3d 452, 454 (Tex. App.—Tyler 2008, orig. proceeding); *see also Renwar Oil Corp.*, 276 S.W.2d at 776; *Yzaguirre*, 53 S.W.3d at 371. The nature of the suit is determined from the facts alleged in the plaintiff's petition, the rights asserted, and the relief sought. *In re Signorelli Co*, 446 S.W.3d at 474; *In re Hardwick*, 426 S.W.3d 151, 161 (Tex. App.—Houston [1st Dist.] 2012, orig. proceeding); *Airvantage L.L.C.*, 269 S.W.3d at 257; *see also Renwar Oil Corp.*, 276 S.W.2d at 775. Thus, "mandatory venue provisions may not be evaded merely by artful pleading." *In re Kerr*, 293 S.W.3d 353, 359 (Tex. App.—Beaumont 2009, orig. proceeding).

Numerous cases have applied these tenets in analyzing the types of real property suits that are subject to mandatory venue under section 15.011. *See, e.g., In re Applied Chem. Magnesias Corp.*, 206 S.W.3d at 119 (determining that mandatory venue applied in a declaratory judgment action to determine rights under a letter agreement to mine marble on land); *Yzaguirre*, 53 S.W.3d at 371 (concluding that mandatory venue did not

14

apply where the substance of the dispute concerned the correct measure of royalties, that is, the obligations that the lessee owed to the royalty owners under the terms of the leases, rather than the boundaries of the leases or the percentage of the royalty owners' royalties); *Renwar Oil Corp.*, 276 S.W.2d at 774–75 (stating that mandatory venue applied to a declaratory judgment action where the determination of royalty amounts required resolving a dispute over lease boundaries); *In re Signorelli Co.*, 446 S.W.3d at 474 (determining that mandatory venue applied in an action seeking rescission of purchase agreement regarding land); *In re Hardwick*, 426 S.W.3d at 163 (concluding that mandatory venue applied in an action for breach of contract and fiduciary duty where the remedy sought included forfeiture of mineral interests); *In re Lemons*, 281 S.W.3d at 645 (determining that mandatory venue applied in a suit to impose a constructive trust on real property); *In re Freestone Underground Storage, Inc.*, 429 S.W.3d at 116 (stating that mandatory venue applied in a case concerning the termination of a mineral lease); *In re Evolution Petroleum Co.*, 359 S.W.3d 710, 714 (Tex. App.—San Antonio 2011, orig. proceeding) (holding that mandatory venue applied where the essence of the dispute was whether the primary term of a mineral lease had expired); *Bracewell*, 638 S.W.2d at 615 (determining that mandatory venue applied to a dispute regarding whether a mineral lease had terminated).

In the instant case, Terfam and Quartey's original petition does not expressly invoke issues regarding ownership of the disputed mineral interests and instead states that Terfam and Quartey seek only monetary damages for breach of the Agreements. In fact, Terfam and Quartey have expressly disavowed any intention of seeking an interest in real

property in this lawsuit. In this regard, we note that the plaintiffs are the masters of their suit regarding the claims and parties they choose to pursue. *See In re Champion Indus. Sales, LLC*, 398 S.W.3d 812, 823 (Tex. App.—Corpus Christi 2012, orig. proceeding); *Heard v. Moore*, 101 S.W.3d 726, 728 (Tex. App.—Texarkana 2003, pet. denied); *see also Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002). The plaintiffs are free to tailor their pleadings to eschew those claims which would mandate one forum instead of another forum for litigation of those well-pleaded claims. *In re Champion Indus. Sales, LLC*, 398 S.W.3d at 823; *see Holmes Group, Inc.*, 535 U.S. at 831.

However, we determine venue based on the pleadings, the motion to transfer and the response, affidavits, and the discovery filed on the motion to transfer and the response. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.064(a); TEX. R. CIV. P. 87(3)(b), 88. Although Terfam and Quartey's original petition eschews any relief other than damages, their petition includes, as attachments, the Agreements, Addendums, and Assignments. The Agreements provide that the parties "contract and agree" to the provisions of the Agreements because the parties are "desirous of acquiring oil and gas leases in Denton County, Texas." The Agreements state that Terfam and Quartey will receive working interests in oil and gas leases as compensation for their investments. The Agreements specify that Prosperity and Terfam and Quartey are "tenants in common" regarding the oil and gas leases. A tenancy in common is an undivided possessory interest in real property. *Dierschke v. Central Nat'l Branch of First Nat'l Bank*, 876 S.W.2d 377 (Tex. App.—Austin 1994, no writ); *Rittgers v. Rittgers*, 802 S.W.2d 109 (Tex.

16

App.—Corpus Christi 1990, writ denied).   "Working interest owners" in the same mineral leasehold estate are cotenants.   *See Willson v. Superior Oil Co.*, 274 S.W.2d 947, 950 (Tex. Civ. App.—Texarkana 1954, writ ref'd n.r.e.).   The Assignments to the Agreements contemplated the transfer of interests in property between the parties.   The Addendums provided that in the event of breach by Prosperity, Terfam and Quartey would receive additional working interests in the leases.

According to the evidence attached to Prosperity's amended motion to transfer venue, both Terfam and Quartey testified by the "affidavits of equitable title" filed in Denton County that they are the "owners of the oil and gas leases on the 334 net mineral acres" by virtue of Prosperity's alleged breach of the Agreements.   According to the affidavits, they contend that under the Agreements with Prosperity, they were to have title to the oil and gas leases purchased by Prosperity and their ownership was "in the nature of a mortgage" until their loans were paid back.   They averred that they filed the affidavits to establish their "equitable ownership interest" in the leases and stated that they were the "owners" of the leases.   Suits pertaining to equitable title in land entail mandatory venue based on that land.   *See, e.g., In re Lemons*, 281 S.W.3d at 647; *Anglo Exploration Corp. v. Grayshon*, 576 S.W.2d 151, 154 (Tex. Civ. App.—Corpus Christi 1978, writ dismissed w.o.j.).

If the scope of our review for a venue determination were limited to the four corners of the plaintiffs' petition, venue would be sustainable in Hidalgo County.   Moreover, Terfam and Quartey can presumably limit the relief sought in their breach of contract case to eliminate any issue pertaining to title.   *See, e.g., In re Champion Indus. Sales, LLC*,

17

398 S.W.3d at 823. However, the scope of our review in a venue determination is not so limited, and the record evidence establishes that Terfam and Quartey claim ownership to the oil and gas leases in Denton County which were the subject of the Agreements and Addendums. Based on the foregoing, we conclude that the "essence" or "substance" of this dispute involves the title to the oil and gas leases specified in the Agreements. Accordingly, the mandatory venue statute controls. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.011. We sustain Prosperity's sole issue.

## VI. CONCLUSION

Examining the pleadings and the record evidence, and considering the relevant law pertaining to mandatory venue regarding an interest in land, we conclude that this case falls within the parameters of section 15.011 of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.011. Accordingly, venue was mandatory in Denton County. Thus, the trial court erred in denying Prosperity's motion to transfer venue of the case from Hidalgo County to Denton County. We conditionally grant the petition for writ of mandamus in cause number 13-15-00234-CV and direct the trial court to vacate its order denying the transfer of venue and to transfer venue of this matter to Denton County. The writ will issue only if the trial court fails to comply.

Given our disposition of the original proceeding, Prosperity's appeal in cause number 13-15-00184-CV has been rendered moot. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) ("A case becomes moot if a controversy ceases to exist between the parties at any stage of the legal proceedings . . ."); *see also State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994). Accordingly, we dismiss the

18

appeal for want of jurisdiction. *See Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000).

NORA L. LONGORIA,
JUSTICE

Delivered and filed the
29th day of June, 2015.