

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-21-00242-CV

———————————————

LARRY J. REYNOLDS, Appellant

V.

MBRV I, LLC AND MBRV II, LLC, Appellees

On Appeal from the 48th District Court
Tarrant County, Texas
Trial Court No. 048-315357-20

Before Kerr, Birdwell, and Womack, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

This dispute concerns the ownership and possession of real property located in Mansfield, Texas (the Property), which was determined by summary judgment to belong to Appellees MBRV I, LLC and MBRV II, LLC (hereinafter collectively MBRV). In this appeal from the granting of MBRV's traditional motion for summary judgment, Appellant Larry J. Reynolds (Reynolds) complains in one issue that the trial court erred by denying his motion for continuance of the summary judgment hearing. In its cross-issue, MBRV seeks sanctions under Texas Rule of Appellate Procedure 45. We will affirm the trial court's judgment and deny appellate sanctions.

## II. BACKGROUND

On April 24, 2002, Reynolds bought the Property, which was used as a boat-and-RV-storage facility and included storage buildings and a house/office. He conveyed the Property in May 2017 to Mansfield Boat & RV Storage, LLC (Mansfield), an entity that Reynolds controlled. In late 2017, Pender Capital Asset Based Lending Fund I, LP (Pender) loaned money to Mansfield, with the loan secured by a deed of trust that covered the Property. Reynolds signed the deed of trust on behalf of Mansfield. Mansfield defaulted on the loan in February 2018. Ultimately, Mansfield filed for bankruptcy, the bankruptcy court appointed a trustee for Mansfield, and the bankruptcy court authorized Pender to foreclose on the Property.

Thereafter, the Property was transferred to Pender through a Substitute Trustee's Deed with Bill of Sale.

In disputes surrounding the ownership and possession of the Property, Reynolds was held in contempt multiple times by the bankruptcy court.[1] Due to what the bankruptcy court described as "impermissible payments, including but not limited to, payment of business expenses for non-Debtor entities, payments to lawyers whose retention has not been approved by [the bankruptcy court], and payment of personal expenses, including payments of [Reynolds's] mortgage loan for his home in Alaska," Reynolds was ordered to pay money to Mansfield. In subsequent orders, Reynolds was also ordered to pay money to Pender and Mansfield's Chapter 7 Trustee. He was further ordered not "to act or speak" for Mansfield and not to "hold himself out as a representative or agent of" Mansfield.

After the foreclosure sale, according to Pender's managing director, Reynolds refused to vacate the Property and again claimed an ownership interest in the house on the Property. Reynolds even signed a quit claim deed conveying the Property from Mansfield to himself. After the bankruptcy court made a finding that "Reynolds had unclean hands and should not be allowed to participate" in a bid on the Property,

_____

[1]In his appellate brief, Reynolds asserts that many of the disputes were because Pender "claimed misbehavior" against him "multiple times, the most significant of which was the use of approximately $140,000 of cash collateral belonging to [Mansfield] without permission." He describes this "procedural error" as a "significant misjudgment."

Pender purchased any remaining interest that Mansfield possessed in the Property. In a series of transactions in 2019, MBRV obtained title to the Property from Pender and its successor-in-interest.

Thereafter, Reynolds executed two more deeds purporting to convey the Property from Mansfield to himself. The bankruptcy court ultimately signed an order setting aside these deeds, as well as others, finding them "fraudulently executed" by Reynolds. Again, the bankruptcy court ordered that "Reynolds has no authority to act or speak on behalf of [Mansfield] or otherwise hold himself out as a representative or agent of [Mansfield]."

On February 20, 2020, MBRV filed this suit against Reynolds "to establish [its] ownership of the [P]roperty, to recover damages for Reynolds'[s] trespassing on and refusal to vacate the [P]roperty, and to remove the cloud of title created by Reynolds'[s] improper and fraudulent actions." Reynolds failed to answer, and a default judgment was entered. The trial court granted Reynolds's motion for new trial and vacated the default judgment. However, according to MBRV, Reynolds again "did not file an answer, did not assert any affirmative defenses, and did not serve any discovery."

During the pendency of this suit, in August 2020, a federal district court ordered that a criminal contempt case be opened against Reynolds. Reynolds ultimately pleaded guilty and served time in jail. According to his attorney, Reynolds

was "arrested and detained" the week before Christmas and remained "detained" at the time Reynolds filed his response to the summary judgment motion.

On January 19, 2021, MBRV filed a traditional motion for summary judgment on all of its claims, asserting that (1) Reynolds deeded the Property to Mansfield in May 2017, (2) Mansfield sold its remaining interest in the Property to MBRV's predecessor, (3) MBRV obtained full title to the Property and is its rightful owner, (4) the bankruptcy court voided Reynolds's deeds to himself, and (5) Reynolds is trespassing on the Property. On the same day it was filed, the motion for summary judgment was set for hearing on March 3, 2021.

On February 22, 2021, Reynolds filed his motion for continuance of the summary judgment hearing. In the three-page motion, Reynolds acknowledged that the trial court had entered a scheduling order requiring responses to the summary judgment to be filed by February 17, 2021, and replies and objections to responses to be filed by February 24, 2021. However, he asserted that his counsel had "struggled with inclement weather" and was unable to complete his response to the summary judgment motion. The continuance motion claimed that "because Reynolds was detained in federal court for several weeks about two hours outside of the DFW area and thus unable to cooperate with counsel in drafting an answer during that time," Reynolds was seeking a "two-week continuation of the hearing" or alternatively, leave to file a late response by February 26. In the prayer, Reynolds requested "a continuance of the hearing by submission on [MBRV's] Motion for Summary

Judgment currently scheduled March 3 to March 17, 2021." No affidavit accompanied the motion; only a "Declaration of [Reynolds's attorney]" was on the third page of the motion, wherein it stated that "statements of fact above[-]numbered 1–6 are true and correct."

MBRV filed a response in opposition to the request for a continuance, noting that "because of the winter weather," it had offered not to oppose Reynolds's request to file a late response by February 24. MBRV also pointed out that it had served, in September 2020, a request for disclosure to which Reynolds never responded.

On February 24, 2021, Reynolds filed his response to the motion for summary judgment. In it, he again urged the trial court to deny the motion for summary judgment and to "allow discovery to be had in accordance with Texas Rule of Civil Procedure 166a(g)." The summary judgment response included a declaration by Reynolds's attorney.

MBRV filed a reply to the summary judgment response. In it, MBRV argued that Reynolds's response consisted of no summary judgment evidence, no objections to MBRV's evidence, no arguments or legal authorities on the merits, no identification of any genuine issue of material fact, no justification for Reynolds's refusal to answer discovery, and no basis for continuance. The reply noted that a motion for continuance seeking time for discovery must be supported by an affidavit that describes the evidence sought, explains its materiality, and shows that the party requesting the continuance has used due diligence to timely obtain the evidence.

While the record does not show a ruling on Reynolds's motion for continuance, the trial court did reset the hearing on the motion for summary judgment from March 3 to April 8, 2021. The order resetting the hearing also changed the hearing from one by submission to one by Zoom.

The hearing was held on April 8, 2021, and all parties appeared by counsel. At the conclusion of the hearing, the trial court took the motion for summary judgment under advisement.

By letter dated five days after the hearing, the trial court said that it was granting the motion for summary judgment.[2] Thereafter, the court entered a "Final Judgment and Permanent Injunction," and this appeal ultimately followed.[3]

## III. DISCUSSION

### A. Denial of Continuance of Summary Judgment Hearing

In one issue, Reynolds asks whether the trial court erred by granting summary judgment and a permanent injunction when he "requested denial based on his inability to present facts essential to justify his opposition due to extenuating

---

[2]After the trial court's letter was sent, counsel for Reynolds filed an "Original Petition in Intervention and Plea in Abatement" on behalf of Janice Ruth Reynolds, who stated in the petition that she and Reynolds are "a married couple residing in Texas but have been estranged for some time." Multiple motions, responses and replies pertaining to the intervention were filed before a hearing was held and the intervention was struck and severed from this case.

[3]Reynolds's initial notice of appeal was untimely, but his amended motion for an extension was granted.

7

circumstances." MBRV phrases the issue as, "Did the trial court clearly abuse its discretion in denying Reynolds's request for a Rule 166a(g) discovery continuance when Reynolds failed to: (i) identify discovery needed to survive summary judgment, (ii) show that the unidentified discovery would be material, and (iii) establish that he had diligently pursued any discovery?"

### 1. Standard of Review

We review a trial court's ruling on a motion for continuance of a summary judgment hearing for an abuse of discretion. *D.R. Horton–Tex., Ltd. v. Savannah Props. Assocs.*, 416 S.W.3d 217, 222 (Tex. App.—Fort Worth 2013, no pet.) (citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002)); *see also Gen. Motors Corp. v. Gayle*, 951 S.W.2d 469, 476 (Tex. 1997) (orig. proceeding). We do not substitute our judgment for that of the trial court, but instead determine whether the trial court's action "was so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *D.R. Horton–Tex., Ltd.*, 416 S.W.3d at 222 (citing *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004)); *see also In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002) (orig. proceeding). We look at whether the trial court acted without reference to guiding rules or principles. *D.R. Horton–Tex., Ltd.*, 416 S.W.3d at 222 (citing *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004)). Unless the trial court acted arbitrarily and unreasonably, we will not disturb its decision on appeal. *Karen Corp. v. The Burlington N. and Santa Fe Ry. Co.*, 107 S.W.3d 118, 124 (Tex. App.—Fort Worth 2003, pet. denied).

## 2. Applicable Law

Texas Rule of Civil Procedure 166a(g) permits a trial court to deny a summary judgment motion or to grant a continuance to the party opposing summary judgment if that party files an affidavit setting forth the reasons the party cannot present the facts necessary to respond to the motion. Tex. R. Civ. P. 166a(g) ("Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."); *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 662 (Tex. 2009). When a nonmovant "contends that it has not had an adequate opportunity for discovery before a summary judgment hearing, it must file either an affidavit explaining the need for further discovery or a verified motion for continuance." *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996); *see* Tex. R. Civ. P. 166a(g), 251, 252. An affidavit seeking a continuance to obtain additional evidence must describe the evidence sought, explain its materiality, and demonstrate that the party requesting the continuance has used due diligence to timely obtain the evidence. *D.R. Horton–Tex., Ltd.*, 416 S.W.3d at 222–23.

To determine whether the trial court abused its discretion by denying a continuance, we consider three nonexclusive factors: (1) "the length of time the case has been on file," (2) "the materiality and purpose of the discovery sought," and

9

(3) "whether the party seeking the continuance has exercised due diligence to obtain the discovery sought." *Joe*, 145 S.W.3d at 161; *see also D.R. Horton–Tex., Ltd.*, 416 S.W.3d at 223. In general, a litigant is not entitled to a continuance if they fail to diligently use the rules of civil procedure for discovery purposes prior to filing a motion for continuance. *D.R. Horton–Tex., Ltd.*, 416 S.W.3d at 223 (citing *State v. Wood Oil Distrib., Inc.*, 751 S.W.2d 863, 865 (Tex. 1988)).

### 3. Analysis

#### a. Length of Time

The length of time between the commencement of the case and the filing of the motion for continuance was approximately eleven months. MBRV filed its lawsuit in February 2020. While a default judgment was taken initially, a new trial was ordered in August 2020. MBRV did not move for summary judgment until January 2021, and Reynolds filed his motion for continuance in February 2021.

Appellate courts reviewing denials of continuance motions have found no abuse of discretion in cases where there was a much shorter length of time between the commencement of the case and the filing of the motion than the length of time present here. *See, e.g., Harden v. Merriman*, No. 02-12-00385-CV, 2013 WL 5874708, at *5 (Tex. App.—Fort Worth Oct. 31, 2013, no pet.) (mem. op.) (five months); *Aerobic Maint. & Serv., Inc. v. First United Bank & Tr. Co.*, No. 02-08-00232-CV, 2009 WL 1425179, at *4 (Tex. App.—Fort Worth May 21, 2009, no pet.) (mem. op.) (two months); *Rest. Teams Int'l, Inc. v. MG Sec. Corp.*, 95 S.W.3d 336, 342 (Tex. App.—Dallas

10

2002, no pet.) (nine months). Considering the length of time that this case was on file, we cannot say that the trial court abused its discretion based on this factor.

### b. Materiality and Purpose

Reynolds's motion for continuance of the summary judgment hearing contained only a declaration from his attorney that "statements of fact above[-]numbered 1–6 are true and correct." Those facts were:

> 1. On January 21, 2021, this Court issued its *Scheduling Order Regarding Summary Judgment Motion(s) by Written Submission* setting the following deadlines:
>
>> IT IS FURTHER ORDERED that the following deadlines will apply:
>> 1. All responses must be filed by noon on February 17, 2021;
>> 2. All replies and objections to the responses must be filed by noon on February 24, 2021; and
>> 3. Any objections to the reply must be filed by noon on March 1, 2021.
>
> 2. The undersigned counsel for Reynolds has struggled with inclement weather and was unable to complete the response timely by February 24.
>
> 3. To properly answer the Motion, Reynolds has also sought assistance and testimony of Bryan Rice, an accountant who has performed work that would be of assistance to Reynolds. Mr. Rice is amendable to assist, but was unable to be contacted during the freeze of last week.
>
> 4. Because the inclement weather has resulted in a number of deadlines stacked up, and because Reynolds was detained in federal court for several weeks about two hours outside of the DFW area and thus unable to cooperate with counsel in drafting an answer during that time, Reynolds seeks a two-week continuation of the hearing on the Motion,

11

or in the alternative, leave to late file a response on February 26, 2020 [sic].

5. Of course, Reynolds is agreeable that any delay granted to him will also be granted to [MBRV] for their last reply.

6. This request is not for delay only, but that justice be done. This is the first continuance sought in this matter, though Reynolds did request and was granted leave to file a late reply to the suit.

Two days later, in his response to the summary judgment motion, Reynolds expanded on the reasons he needed a continuance: "COVID-19, the months-long detention of [Reynolds] resulting from Pender Capital's efforts in the bankruptcy court, and most recently, the Texas polar vortex." Reynolds alleged that "the complexity of this case and the circumstances in which the case has developed necessitates additional time to develop counterclaims and investigate [MBRV's] allegations." Attached to the response was a declaration by Reynolds's attorney stating that (1) he was hired by Reynolds in July 2020 on this and one other case; (2) Reynolds was arrested on a show cause order before Christmas and was still "detained"; (3) Reynolds had been unable to assist him in prosecuting the case due to the "complexity of this case and the circumstances in which the case has developed"; (4) the case was complicated by "COVID-19, the months-long detention of [Reynolds] resulting from Pender Capital's efforts in the bankruptcy court, and most recently, the Texas polar vortex"; (5) "Reynolds has been beset by no fewer than three legal actions directly[] and additional suits in Alaska which have complicated his position"; (6) the "case involves many cases involving many parties"; (7) Reynolds was

most concerned with first resolving another case; (8) Reynolds was being held in a facility "nearly two hours away from the DFW area"; (9) he "believes that Reynolds or his wife may have legitimate claims related to the lien and subsequent foreclosure" of the Property; and (10) since "the subject property was valued in excess of $9,100,000, and Pender credit bid $8,000,015.00 when the payoff was less than $7.8 million," he speculated that "Pender may owe the bankruptcy estate the excess, which would redound to Reynolds."

At the hearing on the summary judgment, the trial court noted the insufficiency of the proof for a continuance:

> I don't think, [Reynolds's counsel], that you have pointed me directly to the discovery that you would take and need in order to avoid the summary judgment.
>
> . . . .
>
> . . . [W]ho is it you would go out and depose or do to prove anything? A map won't change the title or the legal effect of the orders of the bankruptcy court, it seems to me.
>
> . . . .
>
> And I have got a scheduling order. We're pretty close on when the dispositive motions have to be filed and considered.
>
> . . . .
>
> . . . I have not seen what - - what it is that you would go - - what deposition you would go take or what pleading you would file to contest that, but I'm going to look harder at the declaration.

> And that's what I'm concerned about, [Reynolds's counsel], is that I haven't been told what specific discovery you need to go take in order to contest this motion for summary judgment.

Reynolds's attorney responded that he was relying on Rule "166(g)" and believed that he had "given the Court affidavits sufficiently discussing why we can't provide the - - the statements that - - sorry - - facts essential to justify the opposition." The trial court continued, "[Y]ou haven't said when you could get it, and you haven't said what you need." In response, Reynolds's attorney said, "And so if the Court reads my declaration and does not think that we have provided reasons sufficient to justify the - - to justify the denial, then - - then we just have to go on."

On appeal, Reynolds argues that "[t]he complexity of this case and the circumstances in which the case has developed necessitated additional time to develop counterclaims and investigate [MBRV's] allegations." Specifically, Reynolds contends that the summary judgment should have been denied "when he was in jail for much of the time and unable to speak even with counsel due to COVID restrictions."

MBRV responds that Reynolds's "appeal is an empty challenge to the trial court's proper exercise of discretion." In addition, MBRV contends that Reynolds's jail excuse is false because, during the pendency of this suit, including Reynolds's incarceration, Reynolds (i) moved for a new trial and asserted a "meritorious" defense; (ii) moved for leave to reply in support of his new-trial motion; (iii) agreed to a docket control order; (iv) moved to extend the deadline to file a summary judgment response; (v) moved for continuance of the hearing; (vi) designated experts; (vii) presented

14

argument at several hearings; (viii) sent correspondence to the court and MBRV's counsel; (ix) moved for reconsideration of the trial court's final judgment; (x) replied in support of his motion to reconsider; and (xi) responded to MBRV's motion for leave to file an amended reply. Finally, MBRV contends that Reynolds has never identified any evidence that he needed to resist summary judgment and has not explained how such unspecified evidence would be material to the case. And MBRV asserts that after it moved for summary judgment, Reynolds still had time to seek discovery, but he failed to do so.

We agree with MBRV. An affidavit seeking a continuance of a summary judgment hearing must show why the continuance is necessary; conclusory allegations are insufficient. *Sayles v. Senior Care Res., Inc.*, No. 02-20-00124-CV, 2021 WL 62130, at *8 (Tex. App.—Fort Worth Jan. 7, 2021, no pet.) (mem. op.). As noted above, the motion must also be supported by an affidavit describing, among other things, the materiality of the evidence sought. *Id.* at *7.

Here, there is nothing in the record to suggest what, if anything, Reynolds hoped to obtain with additional discovery to support his claim that MBRV was not the owner of the Property. In addition, there is nothing in the record to indicate when the information may be available. While Reynolds says that he "sought assistance and testimony" of accountant Rice, he failed to state what evidence Rice would provide, why this evidence is material, and what diligence he had exercised in getting the testimony. Further, while Reynolds generally complains about "inclement

15

weather" and Reynolds's detention, he fails to explain the materiality and purpose of any evidence he needed to contest the summary judgment motion. Thus, we cannot say that the trial court abused its discretion by not granting a continuance based on this factor.

### c. Due Diligence

With regard to the third factor, Reynolds was required to show diligence in obtaining discovery. On appeal, Reynolds complains that he "has been beset by no fewer than three legal actions directly, in addition to suits in Alaska[,] which have complicated his position," which required his attorney "to perform legal triage" to manage his resources and to accomplish events. MBRV responds that "three of the matters *ended before MBRV filed this suit*" and "Reynolds does not explain how cases that ended before this one began somehow hindered his ability to seek discovery in this case."

Reynolds's complaints also do not explain his failure to use diligence on several other occasions. First, after the trial court granted a new trial from the default judgment, Reynolds did not file an answer or serve any discovery prior to the motion for summary judgment being filed. Second, after the summary judgment was filed and set for hearing forty-three days later, Reynolds still did not seek any discovery. Third, after the trial court reset the summary judgment hearing for more than the two weeks requested in his motion, Reynolds again did not seek any discovery. Rather, he generally complained in his response to the summary judgment motion that he could

16

not "state facts essential to justify his opposition" and that the trial court should deny MBRV's motion and "allow discovery to be had in accordance with Texas Rules of Civil Procedure 166a(g)."

As set out above, a party moving for a continuance of a summary judgment hearing based on the need to obtain additional evidence bears the burden to convince the court that he used due diligence in seeking to obtain the needed evidence, and he must do so by providing the trial court with an affidavit specifying the evidence sought and explaining why it was not obtained earlier in order to avoid the need for a continuance. *Stierwalt v. FFE Transp. Servs., Inc.*, 499 S.W.3d 181, 192 (Tex. App.—El Paso 2016, no pet.). An affidavit that is general and conclusory does not meet this standard. *Id.* Therefore, a trial court does not abuse its discretion by denying a motion for continuance when the affidavit submitted does not state with particularity what diligence was used to obtain the needed evidence or testimony. *Id.*

In determining whether due diligence was used, the trial court must consider the procedural history and record of the case. *Sayles*, 2021 WL 62130, at *6 (citing *Elberger v. Dub Miller Ford*, No. 01-06-00926-CV, 2007 WL 3293725, at *3 (Tex. App.—Houston [1st Dist.] Nov. 8, 2007, no pet.) (mem. op.)). In this case, that consideration would include the fact that (1) the case had been on file for almost one year before the motion for summary judgment was filed; (2) the hearing on the motion for summary judgment was originally set forty-three days after the motion was filed (instead of the minimum twenty-one days required by Texas Rule of Civil

17

Procedure 166a(c)); (3) the scheduling order set a May 24 discovery deadline; and (4) the hearing on the summary judgment motion was reset from March 3 to April 8 (which exceeded the request in Reynolds's motion for a "two-week continuance of the hearing"). *See Sayles*, 2021 WL 62130, at \*7 ("The failure of a litigant to diligently utilize the Rules of Civil Procedure for discovery purposes will not authorize the granting of a continuance."). Considering the lack of due diligence shown in this case, we cannot say that the trial court abused its discretion based on this factor.

For all of these reasons, we conclude that the trial court acted neither arbitrarily nor unreasonably in denying the continuance of the summary judgment hearing. *See Karen Corp.*, 107 S.W.3d at 124. Therefore, it did not abuse its discretion, and Reynolds's sole issue is overruled.

## B. Appellate Sanctions

In a cross-issue, MBRV asks us to impose sanctions consisting of its appellate attorney's fees for the filing of a frivolous appeal pursuant to Texas Rule of Appellate Procedure 45. *See* Tex. R. App. P. 45. In support of its cross-issue, MBRV contends that "Reynolds lacked a reasonable ground to believe the discretionary denial of his request for a discovery continuance would be reversed." Specifically, MBRV contends that Reynolds never identified evidence sought, never explained the materiality of the unspecified evidence, and never made any effort to obtain any discovery, which means he displayed a total lack of diligence.

18

Under Rule 45, we may award a prevailing party "just damages" if we objectively determine that an appeal is frivolous after considering the record, briefs, or other papers filed with this Court. *Id.*; *Smith v. Brown*, 51 S.W.3d 376, 381 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). A finding that a party filed its appeal in bad faith is neither dispositive nor material to deciding whether an appeal is objectively frivolous and sanctionable pursuant to Rule 45. *Smith*, 51 S.W.3d at 381.

We have the discretion to assess damages for frivolous appeals against a party, but we must exercise that discretion with caution. *Glassman v. Goodfriend*, 347 S.W.3d 772, 782 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (en banc op. on reh'g). In deciding whether an award of damages is appropriate, we consider the record from an advocate's point of view to determine whether Reynolds had reasonable grounds to believe that the challenged order could be and should be reversed. *Id.* Rule 45 does not require that we award just damages in every case in which an appeal is frivolous. *Riggins v. Hill*, 461 S.W.3d 577, 583 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *Durham v. Zarcades*, 270 S.W.3d 708, 720 (Tex. App.—Fort Worth 2008, no pet.) (stating that sanctions pursuant to Rule 45 "should be imposed only in egregious circumstances").

In response to MBRV's motion for sanctions,[4] Reynolds, in his reply brief, asserts that MBRV's claim that he "never attempted to satisfy his burden" regarding his request for a continuance is "demonstrably false." Reynolds contends that this conflates a *failure* to satisfy a burden with an *attempt* to satisfy a burden.

We agree with Reynolds. After reviewing the record, we cannot conclude that Reynolds had no reasonable grounds to believe that the trial court's denial of his request for continuance of the summary judgment hearing could not be reversed. *See Mailhot v. Mailhot*, 124 S.W.3d 775, 778 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (stating that there was no merit to appeal but declining to award damages under Rule 45). This is especially true because we have reviewed this case under an abuse of discretion standard. As one court has noted,

> While an abuse of discretion standard is a heavy burden for the Appellants, this does not mean that their appeal is so groundless as to merit sanctions. Sometimes a judge does abuse his or her discretion. It did not happen in this case, but Appellant was within his right to request the trial court's action be reviewed.

*Roberts v. Rose*, 37 S.W.3d 31, 35 (Tex. App.—San Antonio 2000, no pet.). We therefore deny MBRV's request for sanctions pursuant to Rule 45.[5]

---

[4]Filing no response to a cross-issue requesting sanctions is itself a factor to consider in determining whether an appeal is frivolous. *See Chapman v. Hootman*, 999 S.W.2d 118, 124 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

[5]In its letter brief, MBRV also complains about several "material misrepresentations" made to this court by Reynolds's counsel and urges that he should be sanctioned for such conduct. First, MBRV states that Reynolds made a "false assertion" that his counsel failed to timely notice this appeal because of a

"purported COVID-19 disruption."  MBRV asserts that this is a misrepresentation because "counsel vigorously litigated this case during the purported COVID-19 disruption from July 19 to July 30, 2021" and proceeds to give numerous examples of when this occurred.  Second, MBRV contends that Reynolds "deceived the Court about the status of Mansfield's claims" against Pender by contending that "he sought a discovery continuance largely so Mansfield could intervene and assert claims against Pender."  According to MBRV, this was not true because "Mansfield sold any claims that it had against Pender *to Pender* in the bankruptcy court," Reynolds knew about the sale because he and his counsel "*were present when the bankruptcy judge authorized it in open court on August 30, 2021*," and Reynolds even "*moved for reconsideration of the sale order*, which the bankruptcy court denied."  Third, MBRV argues that Reynolds's statement in his reply brief that he just "now determined that an appeal [of the sale order] would be improper" is also a misrepresentation because "any appeal was time-barred long before Reynolds filed his opening brief, let alone his December 7, 2021 reply."  As MBRV noted, any appeal of the sale order was due by September 27, 2021, and even if Reynolds had timely appealed the order, "it would have been statutorily moot under 11 U.S.C. § 363(m)."  Reynolds has not responded to these specific allegations, but he did state in his reply brief that he "made no deliberate misrepresentation" and at the time he filed his brief, he was "still attempting to determine if an appeal of the bankruptcy court's authorization of the sale of Mansfield's claims to Pender was possible, or if additional claims could be asserted."

"Counsel should be allowed great latitude in presenting argument to the Court."  *In re Harris*, No. 05-05-01080-CV, 2005 WL 2212298, at \*1 (Tex. App.—Dallas Sept. 13, 2005, orig. proceeding) (mem. op.).  "However, that latitude is not unrestricted."  *Id.*  As noted by a sister court,

> The Texas Disciplinary Rules of Professional Conduct impose upon counsel the duty of candor toward the court.  *See* Tex. Disciplinary R. Professional Conduct 3.03(a)(1) (stating that a "lawyer shall not knowingly make a false statement of material fact or law to a tribunal.").  Similarly, both the *Texas Lawyer's Creed* and the *Texas Standards of Appellate Conduct* admonish counsel against making misrepresentations to a court.  The duty of honesty and candor a lawyer owes to the appellate court, includes fairly portraying the record on appeal.

*Schlafly v. Schlafly*, 33 S.W.3d 863, 873 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (footnotes omitted).  While we do not find that these alleged misrepresentations, if true, were material to this appeal, we caution counsel to be mindful of an attorney's duty of candor to the court.  *See Ex parte Heath*, No. 06-18-

## IV. CONCLUSION

Having overruled Reynolds's one issue, the judgment of the trial court is affirmed, and the request for appellate sanctions is denied.

/s/ Dana Womack

Dana Womack
Justice

Delivered: March 3, 2022

---

00127-CR, 2018 WL 3892864, at *2 n.2 (Tex. App.—Texarkana Aug. 15, 2018, no pet.) (mem. op.); *In re Freestone Underground Storage, Inc.*, 429 S.W.3d 110, 114 n.6 (Tex. App.—Texarkana 2014, orig. proceeding); *Coke v. Coke*, No. 05-04-01604-CV, 2006 WL 1461136, at *1 n.1 (Tex. App.—Dallas May 30, 2006, pet. denied) (mem. op.).